STATE of Indiana, Appellant–
Respondent,

v.

Julie VAN ORDEN, Appellee–Petitioner.

No. 03A04–9401–PC–11.

Court of Appeals of Indiana,
Fourth District.

March 6, 1995.

Transfer Denied May 16, 1995.

## OPINION

CHEZEM, Judge.

### Case Summary

Plaintiff–Appellant, the State of Indiana ("the State"), appeals the grant of Defendant–Appellee's, Julie Van Orden's ("Van Orden"), petition for post-conviction relief. We reverse.

### Issues

The State presents several issues for our review which we restate as follows:

1. Whether Van Orden was medicated involuntarily for purposes of attaining competency to assist in her defense at trial;

2. Whether the jury was informed about the drug type used to medicate Van Orden and its effect on her demeanor during the trial;

3. Whether Van Orden was denied effective assistance of counsel.

### Facts and Procedural Issues

Van Orden was convicted of the murder of the former mayor of Evansville. She raised the insanity defense. Before the trial, the trial court ordered that Van Orden be evaluated to determine competency to stand trial. The court-appointed doctors who evaluated Van Orden diagnosed her as a paranoid schizophrenic. Van Orden refused to take the medication recommended for her condition. The trial court subsequently ruled that Van Orden was not competent to stand trial.

Thereafter, Van Orden agreed to take the medication for her schizophrenia. She was re-evaluated by the same physicians. Van Orden received medication for her condition and, after a second competency hearing, she was declared competent to stand trial. She did not object to the medication at the second competency hearing. The trial court ordered that her medication be continued for the trial. Van Orden did not object at trial to the medication nor did she ask the court to remove her from the medication at trial for purposes of supporting her insanity defense.

### Discussion and Decision

■■■ Van Orden, as Petitioner at the post-conviction hearing, had the burden of proving she was entitled to relief by a preponderance of the evidence. Ind.Post–Conviction Rule 1, § 5; *Smith v. State* (1993), Ind.App., 611 N.E.2d 144, 146, *trans. denied.* On appeal, this court will not set aside the decision of a post-conviction court unless the evidence is without conflict and leads unerringly to a result different from that reached by the post-conviction court. *Propes v. State* (1990), Ind., 550 N.E.2d 755, *remand* (1992), Ind., 587 N.E.2d 1291, *cert. den.,* — U.S. —, 112 S.Ct. 3046, 120 L.Ed.2d 913.

I

We must first determine whether Van Orden was medicated involuntarily to attain competence to assist in her defense at trial. The State argues first that Van Orden waived this issue on appeal and, second, that the post-conviction court's findings relating to the voluntariness of Van Orden's medication were erroneous. As for waiver, Van Orden bases her appeal on the fact that she had been medicated over objection in order to obtain competency to stand trial. This argument can reasonably be interpreted to be an argument as to whether her medication was administered by coercion. Thus, there is no waiver.

However, the post-conviction court's findings relating to the voluntariness of her medication are erroneous. The post-conviction court entered the following specific findings on this issue:

1. Van Orden's acceptance of the prescribed anti-psychotic drug Prolixin on September 17, 1980 was involuntary in consideration of the facts that she had been incarcerated in the Vanderburg County Jail and Madison State Hospital for 182 days, had been found mentally incompetent to stand trial on September 2, 1980, had refused medication on prior occasions, had received no action on her request made in open court that she not be medicated, and had her counsel's motion to stay treatment summarily denied by the Court. Cf. *Bee v. Greaves,* 744 F.2d 1387 ([10th Cir.] 1984).

2. By its failure to conduct hearings on Van Orden's request that she not be medicated and defense counsel's motion for stay or treatment, the Court avoided its duty to balance the State's duty to render Van Orden competent for trial and her right not to have unwanted drugs administered to her. *Riggins v. Nevada,* 504 U.S. [127] [112 S.Ct. 1810], 118 L.Ed.[2d 479] 470 [(1992)].

3. Administration of the anti-psychotic drug Prolixin to Van Orden without her consent or the consent of her counsel in the absence of findings by the Court that: (1) Prolixin was necessary for medical rea-

sons; (2) that the drug was necessary to accomplish an essential state purpose; and (3) that there was no reasonable, less intrusive alternative, was a violation of her rights under the due process clause of the 14th Amendment of the U.S. Constitution and Amendment of the U.S. Constitution and Article 1, Section 13 of the Indiana Constitution. *Riggens [Riggins] v. Nevada,* 504 U.S. [127] [112 S.Ct. 1810], 118 L.Ed.2d 479; *State v. Maryott,* Wash.App. [6 Wash.App. 96], 492 P.2d 239 [ (1971) ].

■ That Van Orden had a protected liberty interest against the unwanted and unnecessary administration of anti-psychotic drugs is not questioned. The United States Supreme Court has stated that " '[n]o right is more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.' " *Cruzan v. Missouri Dept. of Health* (1990), 497 U.S. 261, 269, 110 S.Ct. 2841, 2846, 111 L.Ed.2d 224.

The record indicates that Van Orden wanted to stand trial but that she was incompetent to do so. For some time after she had been declared incompetent to stand trial, Van Orden pursued her request for a trial. After being hospitalized for some time in the Madison State Hospital, she agreed to take the medication so that she could have the trial she so wanted. She was thereafter declared competent to stand trial.

■ That she originally objected to being medicated does not preclude a later decision to accept medication as voluntary. Likewise, had Van Orden initially agreed to medication and then recanted, medication administered after her change of mind would be considered involuntarily administered. Nor does it mean that the original objection carries itself throughout the entire proceeding. Van Orden's objection to the administration of medication must be renewed at every stage of the proceeding. Moreover, she had the choice of either receiving the medication and proceeding to trial or remaining hospitalized without medication. Van Orden, in fact, voluntarily

accepted the alternative of medication so that she could proceed to trial.

■ The post-conviction court erred in its conclusion that her confinement made her decision to accept medication a *per se* involuntary decision. There is no evidence in the record which supports a conclusion that Van Orden was administered the medication involuntarily. Van Orden was not physically force-medicated. Her confinement was inevitable due to the fact she had been charged with murder. The only question was where she would be confined—in jail or in a hospital. Confinement at Madison State Hospital resulted from Van Orden's mental condition. Mere physical confinement of a defendant while medicated, absent other evidence of force, does not prove the medication was administered forcibly. Van Orden could have remained there indefinitely in an unmedicated state.

■ Van Orden relies on the analysis in *Riggins v. Nevada* (1992), 504 U.S. 127, 135, 112 S.Ct. 1810, 1815, 118 L.Ed.2d 479 to support her proposition that she was force-medicated. The United States Supreme Court agreed in *Riggins* that administration of medication is involuntary after the defendant's motion to terminate its use is denied. First, the holding in *Riggins* does not apply retroactively to Van Orden's trial result. *Teague v. Lane* (1988), 485 U.S. 933, 108 S.Ct. 1106, 99 L.Ed.2d 268. Second, Van Orden did not object to being medicated at her second competency hearing and nor did she object at trial or request that the court allow her to appear in court unmedicated.

In essence, Van Orden is challenging collaterally the underlying finding of her competency to stand trial while in an unmedicated state. What Van Orden preferred was to proceed to trial without medication so the jury could see her in the condition she maintained at the time of the murder. However, she never directly challenges the post-conviction court's specific findings relating to the trial court's findings made during the incompetency hearings. Those findings as to her inability to assist in her own defense at trial and as to her general competency to stand trial before she was medicated were not disturbed by the post-conviction court. More-

over, had her counsel allowed her to proceed in an incompetent state of mind, we would no doubt be considering today whether Van Orden received a fair trial and effective assistance of counsel on that issue in light of her mental illness.

The post-conviction court's specific finding of fact number one was therefore erroneous. Because Van Orden was not force-medicated, it is not necessary to determine whether the State properly preserved her due process rights relating to the forced administration of said medication.

## II

We must next determine whether the jury was informed about the drug type used to medicate Van Orden and its effect on her demeanor during the trial. The State contends Van Orden's defense of insanity was not affected by the jury seeing her medicated. Van Orden did not object to the jury viewing her in a medicated state on direct appeal. She relies again on *Riggins* in support of this proposition. *Riggins* is not applicable retroactively to the facts in Van Orden's case. Moreover, Van Orden did not prove that the outcome of the trial would have differed had the jury seen her in an unmedicated state. In fact, Dr. Franz testified that he could not determine whether Van Orden's demeanor would have been different during the trial if she had been unmedicated.

■ It is true that when a defendant's sanity is at issue, the jury is entitled to consider the defendant's in-court demeanor as well as the defendant's words in appraising sanity. *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297. An accused's demeanor has probative value when sanity is in issue.

■ However, the post-conviction court failed to consider all the evidence when it made its findings of fact or conclusions of law relating evidence presented to the jury on Van Orden's medication and its effect on her demeanor.[1] Specific finding of fact num-

ber twenty-four (24) found: "Defense counsel presented no evidence to the jury to demonstrate the difference between Van Orden's appearance and behavior at trial and her appearance and behavior prior to her being medicated." This finding disregards the evidence introduced by the prosecution on such issue. We note that in a post-conviction proceeding the trial court is required to make specific findings of fact and conclusions of law sufficient to enable the reviewing court to dispose of the appeal. Ind.P.C.Rul. 1, § 6; *Grigsby v. State* (1987), Ind., 503 N.E.2d 394, 397. In the present case, we need not remand for more specific findings since the issues are sufficiently presented for review. *See, e.g., Kelly v. State* (1993), Ind.App., 625 N.E.2d 1278.

The trial record reveals that substantial evidence was presented to the jury regarding Van Orden's medication and its effect. Through the testimony of numerous psychiatrists, the jury became aware of Van Orden's mental history and present condition, and also knew that Van Orden's remissive state and calm demeanor at trial were the result of medication.

At trial, psychiatrists Sherman Franz, Jon Holdread, Karlene Bascom–Hammitt and David Crane testified that they each met separately with Van Orden and determined that she suffered from paranoid schizophrenia. Dr. Franz testified that when he examined her she had been receiving treatment at the Madison State Hospital for one year. To treat her mental disease, "moderate dosages" of Prolixin, a "phenothiazine medication which is what used to be called a major tranquilizer or anti-psychotic drug" was prescribed for Van Orden.

Further, Dr. Holdread testified that when he examined Van Orden, she was taking Prolixin and appeared calm. Also, Dr. Crane testified that when he interviewed Van Orden, she was relaxed. Dr. Crane reviewed Van Orden's written statement to police and

---

1. We must not confuse the post-conviction court's findings of fact and conclusions of law relating to Van Orden's counsel's failure to request the trial court to allow Van Orden to be observed by the jury in an unmedicated state. These findings by the post-conviction court are separate from any findings it could have made regarding the type and effect of medication administered to Van Orden during the trial.

testified that she "was very difficult to talk with because of her condition" which was unmedicated. Dr. Crane also observed that Van Orden suffered from "significant" mental health problems for many years:

> And I think Julie has had significant problems for many years, probably in the neighborhood of 12 years. And typically also is that they get better and they get worse. It isn't a straight line and I'm not just the same all the time. And I think that the—And generally, in the paranoid schizophrenic, this kind of thinking, the delusions, get worse at some time and better at others. I think during the period of time right around the alleged shooting that she definitely was having significant problems, and that she was significantly delusional.

Dr. Crane testified regarding Van Orden's mental state as a result of being medicated as follows: "Well, presently she's probably healthier than she's been in her adult life. At that time she was anything but healthy."

■ From the testimony of Dr. Franz, Dr. Holdread and Dr. Crane, the jury was apprised of Van Orden's mental state before and after receiving medication. The jury was specifically informed that Van Orden was under medication during the trial through the testimony of Dr. Bascom–Hammitt. Dr. Bascom–Hammitt testified as follows:

Q: Why is a patient given medication? Why is the Defendant given the medication she's given?

A: Medication is prescribed for her because it's believed that medication can help alleviate her of symptoms of illness.

Q: Has it had that effect?

A: It's my opinion that it has.

Q: Now, the—You indicated that the Defendant has been at the hospital where you're employed for—she's been there for a number of months? Is that correct?

A: She's been there well over a year.

Q: I assume she wasn't receiving any kind of treatment for the entire period. Is that right?

A: She was not?

Q: No, she—that she wasn't receiving treatment the whole time that she was there.

A: Treatment with medication began after she was returned as lacking sufficient comprehension for trial in September of 1980.

Q: When did her treatment start?

A: Well, the medication part started when she was returned for treatment after the period of evaluation had been finished.

\*        \*        \*        \*        \*        \*

Q: Now, the drugs, I believe that you testified to earlier, have a—the purpose was to bring her condition under a—into some sort of control?

A: Right.

Q: And has that been successful?

A: I believe that it has.

In addition, Van Orden's handwritten autobiography, written at a time she was unmedicated, was admitted at trial because it had probative value on the defense of insanity. The fact that Van Orden was medicated at trial and the effect of the medication on her were fully imparted to the jury.

■ Van Orden had the burden of proving her insanity defense. The onus was upon her to present evidence relating to her insanity at the time of the crime. Although courtroom demeanor is probative as to an insanity defense, it is not dispositive. The jury had sufficient information as to Van Orden's medicated state at trial and her unmedicated state at the time of the crime to understand her courtroom demeanor was chemically produced and did not reflect her illness at the time of the crime. The insanity defense requires further proving, however. It was to this end that Van Orden failed to meet the burden of proving her insanity defense.

### III

We must finally determine whether Van Orden received effective assistance of trial and appellate counsel. Van Orden claimed on post-conviction that her counsel was inef-

fective because he did not request the trial court to allow her to appear before the jury in an unmedicated state, he did not elicit expert testimony concerning her medication and its effect on her demeanor, and he failed to raise the above issues on appeal. The post-conviction court agreed.

In essence, Van Orden contends that her trial attorney did not meet the requirements of the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh. denied.* Our supreme court has applied the *Strickland* standard in Indiana. *See, e.g., Johnson v. State* (1992), Ind., 584 N.E.2d 1092, *cert. denied,* —— U.S. ——, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992).

First, Van Orden must make a showing that the performance of her counsel was deficient. "Judicial scrutiny of counsel's performance is highly deferential and should not be exercised through distortions of hindsight. Counsel is presumed competent, and appellant must present strong and convincing evidence to rebut the presumption." *Clark v. State* (1990), Ind., 561 N.E.2d 759, 763. The reviewing court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.* A defendant must demonstrate that counsel's performance was unreasonable under the prevailing professional norms. *Turner v. State* (1991), Ind., 580 N.E.2d 665, *reh. denied.* "The proper judicial approach is highly deferential and requires a consideration of the totality of the evidence before the jury." *Johnson,* 584 N.E.2d at 1106.

We must therefore consider not only evidence presented by the defense but evidence presented by the prosecution. As previously discussed, there were significant amounts of evidence introduced to the jury relating to Van Orden's mental state at the time of the crime, as compared to her mental state at the time of the trial. Moreover, defense counsel presented expert witnesses to attest to Van Orden's insanity at the time she committed the murder. The fact that a defense is rejected by the trier of fact is not a sufficient basis upon which trial counsel is deemed ineffective. *See Rahim v. State* (1981), 275 Ind. 450, 417 N.E.2d 343.

That Van Orden's counsel did not request the court to allow her to proceed through the trial unmedicated was purely a matter of strategic planning. Van Orden had previously been declared incompetent to stand trial in her unmedicated state. Defense counsel's two alternatives were to allow her to proceed to trial medicated or not to proceed to trial unmedicated.

Whatever one might conclude about the strategy and performance at issue, isolated instances of poor strategy or inartfully executed examinations do not necessarily amount to ineffectiveness of counsel. *Mott v. State* (1989), Ind., 547 N.E.2d 261. We will not second-guess the propriety of trial counsel's tactics. *See Hunter v. State* (1991), Ind., 578 N.E.2d 353, *reh. denied.*

Moreover, when an ineffective assistance claim is based on counsel's failure to pose an objection, an appellant must demonstrate that proper objection would have been sustained by the trial court. *Lopez v. State* (1988), Ind., 527 N.E.2d 1119, 1130. Van Orden would not have been allowed to proceed with trial in an unmedicated state because she was not competent to stand trial without medication. She has failed to prove that defense counsel's objection to her medicated state at trial would have been sustained.

Second, Van Orden must show prejudice as a result of the deficient performance. She must prove that her attorney's failure to function was so prejudicial that it deprived her of a fair trial. A fair trial is denied when the conviction or sentence results from a breakdown of the adversarial process that renders the result unreliable. *Best v. State* (1991), Ind., 566 N.E.2d 1027. To the contrary, an examination of the record indicates that trial and appellate counsel was not deficient and, thus, not prejudicial. Accordingly, we do not find fundamental error, as did the court on post-conviction.

Reversed.

RILEY and STATON, JJ., concur.