# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### APRIL SESSION, 1997

FILED

**July 28, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

RONALD RICKMAN, )
)
    Appellant )
)
vs. )
)
STATE OF TENNESSEE, )
)
    Appellee )

No. 02C01-9608-CR-00252

SHELBY COUNTY

Hon. Carolyn Wade Blackett, Judge

(Post-Conviction - Capital Case)

For the Appellant:

**WILLIAM P. REDICK, JR.**
Post Office Box 187
6750 Old Hickory Blvd.
Whites Creek, TN 37189

(ON APPEAL)


**WILLIAM P. REDICK, JR.,**
Director
**PAUL BOTTEI,**
Staff Attorney
Capital Case Resource Center
of Tennessee
704 18th Ave. South
Nashville, TN 37203

(AT TRIAL)

For the Appellee:

**CHARLES W. BURSON**
Attorney General and Reporter

**JOHN P. CAULEY**
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493


**JAMES J. CHALLEN, III**
Assistant District Attorney
Criminal Justice Complex
Suite 301, 201 Poplar Ave.
Memphis, TN 38103


OPINION FILED: _____

AFFIRMED


**David G. Hayes**
Judge

**OPINION**

The appellant, Ronald Rickman, appeals the post-conviction court's summary dismissal of his third petition for post-conviction court relief. In 1978, the appellant was convicted of first degree murder and sentenced to death for the contract killing of Deborah Lee Groseclose, the wife of his co-defendant, William Groseclose. In 1981, our supreme court affirmed the appellant's conviction. State v. Groseclose and Rickman, 615 S.W.2d 142 (Tenn.), cert. denied, 454 U.S. 882, 102 S.Ct. 367 (1981). In 1982, the appellant filed his first petition for post-conviction relief, which the post-conviction court denied following the appointment of counsel and a full evidentiary hearing. This court affirmed the lower court's judgment. Groseclose and Rickman v. State, No. 9 (Tenn. Crim. App. at Nashville, February 16, 1984). Our supreme court denied the appellant permission to appeal, and the United States Supreme Court denied certiorari. Rickman v. Tennessee, 469 U.S. 963, 105 S.Ct. 363 (1984). In 1985, the appellant filed a Petition for Writ of Habeas Corpus in federal district court. Subsequently, in 1989, while his habeas corpus petition was still pending in federal district court, the appellant filed his second petition for post-conviction relief. In 1990, the post-conviction court dismissed the appellant's petition without an evidentiary hearing. This court affirmed the lower court's judgment. Rickman v. State, No. 15 (Tenn. Crim. App. at Jackson, September 11, 1991), perm. to appeal denied, (Tenn. 1992). In 1994, pursuant to the appellant's motion for partial summary judgment of his habeas corpus petition, the federal district court vacated the appellant's sentence of death. Rickman v. Dutton, 854 F. Supp. 1305 (M.D. Tenn. 1994). Thereafter, in a separate opinion, the federal district court vacated the appellant's conviction for first degree murder. Rickman v. Dutton, 864 F.Supp. 686 (M.D. Tenn. 1994). The federal district court's opinions are now on appeal before the United States Court of Appeals for the Sixth Circuit.

Nevertheless, on April 13, 1995, the appellant filed the instant petition for post-conviction relief, his third petition.[1] On May 24, 1995, the appellant filed before the post-conviction court a "Motion to Abate Proceedings," pending resolution of the federal appeal.[2] The appellant asserted that affirmance by the Sixth Circuit of the federal district court's decisions would render the instant post-conviction proceedings moot. On July 7, 1995, the appellant further submitted to the post-conviction court a motion for appointment of counsel. On March 6, 1996, the post-conviction court denied the appellant's motions and dismissed the appellant's petition, finding that the appellant had raised no claims in his third petition for post-conviction relief that had not been previously determined or waived.[3]

On appeal, the appellant presents the following issues for our consideration:

(1) Whether the appellant is entitled to a new sentencing hearing pursuant to our supreme court's decision in State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992);

(2) Whether the appellant was denied his right, under the Tennessee constitution, to a unanimous jury verdict;

(3) Whether the appellant was involuntarily administered "mind-dulling drugs" during his trial in violation of the United States Supreme Court's holding in Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1810 (1992);

(4) Whether the death penalty infringes upon the appellant's fundamental right to life in violation of the Tennessee and United States constitutions;

(5) Whether the State's plea offer of a life sentence infringed upon the appellant's right to trial and resulted in the arbitrary imposition of a sentence of death in violation of the Tennessee and United States constitutions;

(6) Whether the appellant was sentenced by an impartial jury in violation of the Tennessee and United States constitutions;

(7) Whether, in violation of the state and federal constitutions, the grand jury was tainted by gender

---

[1] The appellant filed his petition prior to May 10, 1995, the effective date of the 1995 Post-Conviction Procedure Act. Accordingly, the 1995 Act is inapplicable to the appellant's case.

[2] The appellant also submitted a motion to this court to stay his appeal pending the resolution of his federal habeas corpus proceedings. On August 22, 1996, we denied the appellant's motion.

[3] In its order dismissing the appellant's petition, the post-conviction court stated:
Petitioner raises no claims in this third petition for post-conviction relief which have not been either previously determined or waived. As Petitioner has presented no issue requiring an evidentiary hearing the petition is hereby dismissed by this Court.
(Citation omitted).

discrimination in the selection of grand jury forepersons in Shelby County;

(8)     Whether the appellant was denied effective assistance of counsel at trial or in any subsequent proceeding in violation of the state and federal constitutions.

Following a review of the record, we affirm the post-conviction court's judgment.

## ANALYSIS

The appellant contends that the post-conviction court erred in dismissing his petition for post-conviction relief.[4]  The State contends that the appellant's petition is time-barred by the statute of limitations.  Tenn. Code Ann. § 40-30-102 (1990)("[a] prisoner in custody under sentence of a court of this state must petition for post-conviction relief . . . within three years of the date of the final action of the highest state appellate court to which an appeal is taken").  Our supreme court affirmed the appellant's conviction in 1981, prior to the enactment of the three year statute of limitations and prior to the effective date of the statute on July 1, 1986.  The new limitations period applied to existing causes prospectively from this effective date. Abston v. State, 749 S.W.2d 487, 488 (Tenn. Crim. App. 1988).  See also Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)(the supreme court acknowledged the "Abston rule").  Accordingly, the statute of limitations expired in the appellant's case on July 1, 1989.

Regardless of the applicability of the statute, under Burford v. State, 845 S.W.2d 204 (Tenn. 1992), and Sands, 903 S.W.2d at 297,[5] to the various issues

---

[4]Generally, in a post-conviction proceeding, the burden is upon the petitioner to prove by a preponderance of the evidence the allegations in the petition.  Davis v. State, 912 S.W.2d 689, 697 (Tenn. 1995); Wright v. State, No. 01C01-9506-CR-00211 (Tenn. Crim. App. at Nashville, March 20, 1997).  The factual findings of the trial court are conclusive on appeal unless the evidence preponderates against those findings.  Id.

[5]See, e.g., Sample v. State, No. 02C01-9505-CR-00131, -00139 (Tenn. Crim. App. at Jackson, September 30, 1996), perm. to appeal denied, (Tenn. 1997)(although filed after the statutory period of limitations had commenced and expired, the appellant's petition for post-conviction relief set forth a viable ground for relief, as the petition was filed within three years of an opinion announcing a new, retroactively applied, constitutional rule); Tenn. Code Ann. § 40-30-105(1990).

raised by the appellant, the appellant asserts that the State did not rely upon the statute of limitations when arguing before the post-conviction court and cannot rely upon this defense on appeal. In its answer to the appellant's petition and in proceedings before the post-conviction court, the State argued that the court should dismiss the appellant's petition, because the appellant's case was pending before the United States Court of Appeals for the Sixth Circuit. Inexplicably, in its response, the State did not allege the expiration of the statute of limitations, nor did it raise the defenses of waiver and previous determination or address the merits of the appellant's petition.

Generally, with respect to those seeking post-conviction relief, this court will not address post-conviction issues that were not raised in the petition or addressed in the post-conviction court. Brown v. State, 928 S.W.2d 453, 457 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1996)(citing State v. Smith, 814 S.W.2d 45, 49 (Tenn. 1991)). The appellant correctly observes in his brief that this court has similarly declined to adopt a position of the State taken for the first time on appeal. State v. Perry, No. 03C01-9401-CR-00016 (Tenn. Crim. App. at Knoxville), perm. to appeal denied, (Tenn. 1995). Moreover, the statute of limitations is an affirmative defense which the State must plead and prove. Smith v. State, 873 S.W.2d 5, 6 (Tenn. Crim. App. 1993). Failure to do so constitutes a waiver of the defense. Id. (citations omitted). See also Sandusky v. State, No. 01C01-9404-CC-00142 (Tenn. Crim. App. at Nashville, March 2, 1995)(a statute of limitations defense may not be raised for the first time on appeal). The post-conviction court may raise the issue *sua sponte*. Id. See also Handley v. State, 889 S.W.2d 223, 224 (Tenn. Crim. App. 1994). However, in the instant case, the court did not address this defense.

Nevertheless, in Sands, 903 S.W.2d at 299, our supreme court, in the context of Tenn. R. Civ. P. 8.03's specific pleading requirement, held that this court did not err in applying the statute of limitations to the appellant's coram nobis claim, despite

the State's failure to specifically plead the period of limitations applicable to coram nobis actions, either in its motion to dismiss the appellant's petition for a writ of coram nobis and/or post-conviction relief or at the hearing before the trial court. The State did cite the statute of limitations applicable to post-conviction petitions. Id. Accordingly, the court concluded that the appellant had received fair notice of the defense. Id. The supreme court observed:

> Although Tenn. R. Civ. P. 8.03 does require that a statute of limitations defense be specifically pleaded, it is well settled that failure to do so does not result in a waiver of the defense if the opposing party is given fair notice of the defense and an opportunity to rebut it. In other words, the purpose of the specific pleading requirement is to prevent a party from raising a defense at the last moment and thereby prejudicing the opposing party's opportunity to rebut the defense.

Id. (citations omitted). In Smith, 873 S.W.2d at 6-7, this court suggested, consistent with the above rationale, that when a defense has not been pled, but the petitioner has raised the issue in his own pleadings, there is no waiver. In the instant case, as pointed out by the State, the appellant addressed the statute of limitations defense in his petition for post-conviction relief and in his brief on appeal. Additionally, appellant's counsel raised the issue of the statute of limitations before the post-conviction court when arguing before the court that the appellant's petition should not be dismissed. Appellant's counsel conceded that the statute of limitations had already run, but cited exceptions to application of the statute. These facts are distinguished from those in Perry. The proof reveals that the appellant was clearly aware of the statute of limitation and its importance. Thus, the State's failure to specifically plead the defense of statute of limitation did not prejudice the appellant. Accordingly, the State may, on appeal, rely upon the defenses of statute of limitation, waiver, and previous determination in support of its position.

However, the appellant contends that the post-conviction court failed to enter specific findings as to each issue raised by the appellant in his petition. In effect, the appellant challenges the post-conviction court's compliance with Tenn. Code

Ann. § 40-30-118(b)(1990). Tenn. Code Ann. § 40-30-118(b) provides:

> Upon the final disposition of every petition, the court shall enter a final order, and . . . shall set forth in the order or a written memorandum of the case all grounds presented and shall state the findings of fact and conclusions of law with regard to each such ground.

This court has observed that, "[a]lthough this requirement has been determined to be mandatory, the failure of the trial judge to abide by the requirement does not always mandate a reversal of the trial court's judgment." State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984)(citations omitted). See also Swanson v. State, 749 S.W.2d 731, 739 n.3 (Tenn. 1988). Noncompliance by the post-conviction court does not warrant a reversal if the record is sufficient to effectuate a meaningful appellate review. Brown v. State, No. 03C01-9107-CR-00233 (Tenn. Crim. App. at Knoxville, June 26, 1992). Even if not ideal in form, the order of dismissal in this case does set forth the reasons for the post-conviction court's dismissal of the appellant's petition. "[W]here the record of the proceedings contains the reasons of the trial judge for dismissing the petition, the record is sufficient to effectuate meaningful appellate review." Watkins v. State, No. 1121 (Tenn. Crim. App. at Knoxville, September 18, 1989).

Of course, we must still determine if the post-conviction court properly dismissed the appellant's petition without appointing counsel and without an evidentiary hearing. This court has observed that there is a discernible trend toward appointing counsel to assist *pro se* appellants in post-conviction proceedings, providing opportunities to amend petitions, and allowing evidentiary hearings.[6] Carmley v. State, No. 03C01-9305-CR-00167 (Tenn. Crim. App. at Knoxville, January 13, 1994). Nevertheless, "a clear but patently non-meritorious petition may be dismissed summarily," without the appointment of counsel or an evidentiary

---

[6]In the instant case, the record clearly reflects that, despite the post-conviction court's failure to appoint counsel, the appellant received the assistance of counsel at all stages of the proceedings and the appellant's attorney drafted the appellant's petition.

hearing.  Martucci v. State, 872 S.W.2d 947, 949 (Tenn. Crim. App. 1993);  Cureton

v. Tollett, 477 S.W.2d 233, 236 (Tenn. Crim. App. 1971).  A petition sets forth a

colorable claim if it alleges facts showing that the conviction resulted from an

abridgment of a constitutional right and demonstrates that the ground for relief was

not previously determined or waived.  Carmley, No. 03C01-9305-CR-00167.


We must therefore determine whether the appellant's claims have been

waived or previously determined.  Tenn. Code Ann. § 40-30-112 (1990) provides:

> A ground for relief is 'previously determined' if a court of competent
> jurisdiction has ruled on the merits after a full and fair hearing. . . .  A
> ground for relief is 'waived' if the petitioner knowingly and
> understandingly failed to present it for determination in any proceeding
> before a court of competent jurisdiction in which the ground could have
> been presented.

Initially, the record conclusively demonstrates that the appellant's claim of ineffective

assistance of counsel has been previously determined.[7]  The appellant contends,

however, that any waiver was not knowing and understanding.  See Tenn. Code

Ann. § 40-30-112(b)(1).  Moreover, he asserts that the objective standard of waiver

articulated by the supreme court in House, 911 S.W.2d at 705, should not be

"retroactively" applied to his case.  He contends that such application would violate

due process and *ex post facto* provisions of the Tennessee and United States

Constitutions.

---

[7]With respect to any additional factual allegations raised in the instant petition, this court
has previously held that the issue of ineffective assistance of counsel is a single "ground for relief"
as contemplated by Tenn. Code Ann. § 40-30-111 (1990).  Cone v. State, 927 S.W.2d 579, 581-
582 (Tenn. Crim. App. at Jackson, March 22, 1995), perm. to appeal denied, (Tenn. 1996).  In
Cone, we observed
> A petitioner may not relitigate a previously determined issue by presenting
> additional factual allegations.  We should not encourage post-conviction
> petitioners to invent new facts to revive an issue which was unfavorably decided,
> nor should we allow petitioners to 'sandbag' by reserving factual claims until their
> second or third petition.
Id. at 582.  Additionally, with respect to the performance of counsel during prior post-conviction
proceedings, there is of course no right to effective assistance of counsel in the post-conviction
context.  House v. State, 911 S.W.2d 705, 712 (Tenn. 1995), cert. denied, __ U.S. __, 116 S.Ct.
1685 (1996).  See also Deem v. State, No. 01C01-9403-CC-00083 (Tenn. Crim. App. at Nashville,
August 29, 1996).

In House, our supreme court concluded that "[w]aiver in the post-conviction context is to be determined by an objective standard under which a petitioner is bound by the action or inaction of his attorney." Id. at 714. However, in articulating this objective standard of waiver, the court observed that "Tennessee cases dealing generally with the concept of waiver in the post-conviction context apply an objective standard and impute the conduct of counsel to their clients." Id. at 713. The court then applied this standard to the appellant in that case. In Melson v. State, No. 02C01-9402-CR-00023 (Tenn. Crim. App. at Jackson), perm. to appeal denied, (Tenn. 1996), in its order denying the appellant's petition for a rehearing, this court rejected the appellant's argument that the waiver standard set forth in House should not be applied retroactively "'to a petitioner who has relied on the plain language of the post-conviction statute.'" Indeed, we noted that relevant case history indicated that the statute, prior to the supreme court's opinion in House, did not require personal waiver. Id. See also O'Guinn v. State, No. 02C01-9510-CC-00302 n. 1 (Tenn. Crim. App. at Jackson, April 29, 1997)(in applying House, this court observed that "[w]hile it is true that House was not issued until three months after the trial court's dismissal of Appellant's claim, the concept of an objective waiver standard was well-established prior to that ruling"). Thus, we must reject the appellant's argument that House altered the situation of the appellant to his disadvantage. State v. Bragan, 920 S.W.2d 227, 241 (Tenn. Crim. App. 1995), perm. to appeal denied, (Tenn. 1996)(citing State v. Pearson, 858 S.W.2d 879, 882 (Tenn. 1993)). See also State v. Ricci, 914 S.W.2d 475, 480 (Tenn. 1996)("[a]n ex post facto law contains two critical elements . . . [f]irst, the law must apply to events occurring before its enactment; second, it must disadvantage the offender affected by it"). The supreme court's decision in House did not change the law, but merely clarified existing law. Accordingly, application of the objective waiver standard to the appellant's case violates neither ex post facto nor due process provisions of the

Tennessee and United States Constitutions.[8]

Even in the context of an objective waiver standard, the appellant contends that several issues could not have been presented in any earlier proceeding. Tenn. Code Ann. § 40-30-112(b)(1). Clearly, "the waiver provision cannot logically or legally 'apply to a defense [or grounds for relief] . . . which did not exist and could not have been asserted by the most diligent counsel at the [prior] hearing.'" Swanson, 749 S.W.2d at 735 (citing Pruett v. State, 501 S.W.2d 807, 809 (Tenn. 1973)). See also Burford, 845 S.W.2d at 208 ("[b]efore a state may terminate a claim for failure to comply with procedural requirements . . ., due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner). Additionally, Tenn. Code Ann. § 40-30-105 permits a petitioner to rely upon "a right that was not recognized as existing at the time of the trial if either constitution requires retrospective application of that right."

Nevertheless, we conclude that the record supports the post-conviction court's finding that the appellant has waived the following issues:[9] whether the appellant was denied his right, under the Tennessee constitution, to a unanimous jury verdict; whether the death penalty infringes upon the appellant's fundamental right to life in violation of the Tennessee and United States constitutions; whether the State's plea offer of a life sentence infringed upon the appellant's right to trial

_____

[8]We do not address whether the standard of waiver to be applied in the post-conviction context is a rule of procedure not affecting any substantial right of the appellant. Bragan, 920 S.W.2d at 241.

[9]The appellant contends that, because his claims involve "fundamental errors," they cannot be waived. Of course, because only constitutional violations are cognizable in post-conviction proceedings, Tenn. Code Ann. § 40-30-105, every cognizable error could be characterized as "fundamental." Nevertheless, our supreme court has observed that states have no constitutional duty to provide post-conviction relief procedures, and, accordingly, the opportunity to collaterally attack constitutional violations during the conviction process is not a fundamental right entitled to heightened due process protection. Burford, 845 S.W.2d at 207. Moreover, to the extent that the appellant is arguing that capital litigants should be exempt from waiver or statute of limitations provisions of the Post-Conviction Procedure Act, the legislature has declined to provide any such exception and we decline to hold that either the state or federal constitution mandates any such exception.

and resulted in the arbitrary imposition of a sentence of death in violation of the Tennessee and United States constitutions; whether the appellant was sentenced by an impartial jury in violation of the Tennessee and United States constitutions; and whether, in violation of the state and federal constitutions, the grand jury was tainted by gender discrimination in the selection of grand jury forepersons in Shelby County.[10]

---

[10]The appellant asserts that numerous issues raised in his petition were previously unavailable for waiver or statute of limitations purposes, because our supreme court's decision in Owens and Payne v. State, 908 S.W.2d 923, 927 (Tenn. 1995), was issued following his prior post-conviction proceedings and following the commencement and expiration of the applicable statute of limitations. In Owens and Payne, pursuant to principles of statutory construction, our supreme court held that Tenn. Code Ann. § 40-14-207(b) (1990), authorizing funding for expert services if necessary to protect the constitutional rights of indigent capital defendants, was applicable in post-conviction capital cases. Id. However, this court recently opined that "nothing in Owens suggests a new constitutional rule as anticipated by Burford or retroactive application to all prior post-conviction actions." Wright, No. 01C01-9506-CR-00211. The court declined to characterize Owens and Payne as a later-arising legal ground supporting the appellant's claim of ineffective assistance of counsel at trial and on appeal. The contention of the appellant in the instant case is similarly without merit.

The appellant additionally contends that his claim concerning his right to a unanimous jury verdict is not subject to waiver or the statute of limitations, as our supreme court's decision in Shelton v. State, 851 S.W.2d 134 (Tenn. 1993), was issued following his prior post-conviction proceedings and following the commencement and expiration of the statute of limitations. In Shelton, 851 S.W.2d at 137, the court held that its opinion in Burlison v. State, 501 S.W.2d 801 (Tenn. 1973), required that "when evidence suggests that a defendant has committed many sexual crimes against a victim, the court must require the state to elect the particular offenses for which convictions are sought." We doubt that, pursuant to Meadows, 849 S.W.2d at 751, the court announced a new rule of law, i.e., a rule that breaks new ground or imposes a new obligation on the state or federal government. The court noted "the well established right under our state constitution to a unanimous jury verdict," Shelton, 851 S.W.2d at 137. Moreover, the holding in Shelton was dictated by the holding in Burlison, imposing a duty on the trial court "'to require the State, at the close of its proof-in-chief, to elect the particular offense of carnal knowledge upon which it would rely for conviction, and to properly instruct the jury so that the verdict of the jury would be united on the one offense.'" Id. at 136 (citing Burlison, 501 S.W.2d at 804). In any event, the holding in Shelton is not even applicable by analogy to the appellant's case in light of our subsequent conclusion that, with respect to the appellant, only one offense, premeditated first degree murder, was presented to the jury for consideration.

We note in passing that, contrary to the appellant's argument in his reply brief, his claim concerning his right to a unanimous jury verdict does not depend upon our supreme court's decision in Middlebrooks, 840 S.W.2d at 317. Indeed, in the main body of his argument addressing this issue, the appellant does not once cite Middlebrooks.

The appellant further contends that his claim that he was sentenced by an impartial jury has not been waived and is not barred by the statute of limitations. He asserts that the United States Supreme Court in Morgan v. Illinois, 504 U.S. 719, 112 S.Ct. 2222 (1992), announced a new right or rule of law that must be retroactively applied to his case. In Morgan, the Court's holdings, concerning the requirement of an impartial jury during the sentencing phase of a capital trial and the removal for cause of a juror who declares that he or she will automatically vote to impose the death penalty if the defendant is convicted, clearly do not constitute new rules of law. Id. at 728-729, 2229-2230. To the extent the Court in Morgan announced a new rule of law that must be retroactively applied, the new rule imposed a duty on the trial court to allow a defendant to ask prospective jurors whether or not they would automatically vote in favor of death in the event of a guilty verdict. Id. at 736, 2233. Yet, the appellant in the instant case does not claim that the trial court impermissibly limited voir dire. Rather, he contends that, during federal proceedings, he discovered that, in fact, one juror in his case was predisposed to impose the death penalty.

Thus, alternatively, the appellant argues that this issue was not waived or subject to the

## A. MIDDLEBROOKS CLAIM

The appellant has not waived his argument that, in violation of our supreme court's decision in Middlebrooks, 840 S.W.2d at 317, the State relied upon the felony murder circumstance to both prove first degree murder and to render the appellant death eligible. In Barber v. State, 889 S.W.2d 185 (Tenn. 1994), cert. denied, __ U.S. __, 115 S.Ct. 1177 (1995), the supreme court held that the decision in Middlebrooks announced a new rule that should be applied retroactively pursuant to Meadows, 849 S.W.2d at 748. See also Sample, No. 02C01-9505-CR-00131, -00139.[11] Nevertheless, a review of the record reveals that the jury returned a verdict of guilt as to count one of the indictment. Count one of the indictment charged the appellant with "feloniously, wilfully, deliberately, maliciously and premeditatedly Kill[ing] and Murder[ing]" the victim. Accordingly, the indictment only encompassed premeditated first degree murder or what was referred to as common law murder. See Tenn. Code Ann. § 39-2402(a)(1977). Thus, Middlebrooks is inapplicable.[12]

---

statute of limitations, because the factual basis of his claim was only established during his federal proceedings, due to investigative assistance provided in federal court. Yet, the appellant does not allege specifically when he acquired evidence supporting his claim. The appellant's federal proceedings were initiated in 1985, well before the filing of the appellant's second petition for post-conviction relief and the expiration of the statute of limitations. The appellant has failed to adequately rebut the presumption of waiver or otherwise explain why his claim should be addressed in these proceedings. Moreover, the appellant does not claim that the ground for relief was previously unavailable, see, e.g., Burford, 845 S.W.2d at 211 (Daughtrey, J., concurring)(citing the example of suppression of material evidence by the State that is concealed for many years after trial), but rather that he lacked adequate funds to investigate his claim. Again, to the extent the appellant argues that this claim remains viable because our supreme court's decision in Owens and Payne was issued in 1995, we have already determined that the court's decision has no such retroactive effect. Reviewing the record, we decline to conclude that due process mandates the consideration of this issue.

[11]We note that the appellant filed his petition within three years of the supreme court's decision in Middlebrooks. Thus, pursuant to Burford and Sands, even if the statute of limitations is applicable to the appellant's petition, this claim remains a viable ground for post-conviction relief.

[12]We note that, in Rickman, 864 F.Supp. at 694, the federal district court similarly found, "The jury found Rickman guilty of wilful, premeditated, and deliberate murder." However, although the indictment only charged premeditated first degree murder, the trial court, in its instructions to the jury, recited verbatim the language of Tenn. Code Ann. § 39-2402(a)(1977), which subsection encompassed both premeditated and felony murder:

> Every murder perpetrated by means of poison, lying in wait, or by any other kind of wilful, deliberate, malicious, and premeditated killing, or committed in the perpetration of, or attempt to perpetrate, any murder in the first degree, arson, rape, robbery, burglary, larceny, kidnapping, aircraft piracy, or the unlawful throwing, placing or discharging of a destructive device or bomb, is murder in the first degree.

However, the trial court then instructed the jury:

## B. FORCED MEDICATION

The appellant next contends that, in violation of his due process rights, he was forcibly administered "mind-dulling" medication during his trial. In his first post-conviction petition, filed in 1982, the appellant asserted that he was incompetent to stand trial as a result of the State's administration of Meprobamate and Dalmane during trial. On appeal, this court concluded that the record did not preponderate against the trial court's finding to the contrary. Groseclose and Rickman, No. 9. In 1985, the appellant filed a federal writ of habeas corpus alleging, *inter alia*, that "he was unconstitutionally administered Meprobamate and Dalmane by the State at critical stages of his trial." Rickman, 864 F.Supp. at 712. The appellant's second post-conviction petition filed in 1989, and while the federal writ was still pending, alleged no claim of forced medication. In 1994, the federal district court for the Middle District of Tennessee, relying upon Riggins v. Nevada, 504 U.S. 127, 112 S.Ct. 1811 (1992)[13], concluded that, because the appellant had been "administered drugs which cause drowsiness and may inhibit their ability to follow the proceedings,

> When the act of killing is <u>not</u> done during the commission of a rape, robbery, or kidnapping, in order to make it murder in the first degree not only must the killing be done wilfully, deliberately and maliciously, but it must also be done with premeditation, that is a design to kill must be formed coolly and deliberately and before the act is performed by which death is produced and the killing must be the cool and deliberate act of the slayer.
>
> <u>This is the distinctive feature of murder in the first degree, as charged in the indictment</u>.

(Emphasis added).

Jury instructions must be reviewed in the context of the overall charge rather than in isolation. State v. Byrd, No. 02C01-9508-CR-00232 (Tenn. Crim. App. at Jackson, January 2, 1997). In this context, it is apparent that the trial court did not intend to have the jury apply the felony murder doctrine to this case. See, e.g., State v. Ward, 663 S.W.2d 805, 807-808 (Tenn. Crim. App. 1983)(in this somewhat analogous case, the trial court recited the language in Tenn. Code Ann. § 39-2402 in its instruction to the jury despite the absence of any evidence at trial that the murder was committed in the perpetration of a felony; even in light of evidence that jurors may have misunderstood the instruction, this court found no error, concluding that the inclusion in the instructions of the reference to felony murder was only an attempt to provide the jury with a complete definition of the offense for which the appellant was indicted and was a correct statement of Tennessee law).

[13]In Riggins, the defendant challenged his convictions on grounds that the State of Nevada forced drugs upon him at trial. Riggins argued that, because he relied upon an insanity defense, the forced medication deprived him of the right to show jurors his demeanor and "true mental state." Thus, the State's administration of antipsychotic drugs over his objection denied him due process. The Supreme Court agreed finding these facts implicated Riggins' Fourteenth Amendment right and, additionally, his Sixth Amendment right to assist counsel in his defense.

13

due process requires a showing that such medication is necessary to accomplish an essential state policy." Rickman, 864 F.Supp. at 713. In April 1995, the appellant, relying upon Riggins as a new rule of law, filed the instant petition alleging, *inter alia*, that he was "involuntarily administered mind-dulling drugs during the trial" in violation of his state and federal due process rights.[14]

The existence of a constitutional right to refuse involuntarily administered medication grounded upon a liberty interest under the due process clause of the Fourteenth Amendment is undisputed. In Washington v. Harper, 494 U.S. 210, 221, 110 S.Ct. 1028, 1036 (1990), the Supreme Court recognized the existence of a "significant liberty interest [of a convicted prisoner] in avoiding the unwanted administration of antipsychotic drugs."[15] The Court also stated: "The forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." Id. at 229, 110 S.Ct. at 1041. Although the Court refused to find an absolute liberty interest of a competent person to refuse

---

[14] The State contends in its brief that this issue has been previously determined by the federal district court, which decided this issue in favor of the appellant. Rickman, 864 F.Supp. at 713-714. Indeed, this court has observed:

> Under the doctrine of *res judicata*, a second suit is barred between the same parties on the same cause of action with respect to all issues which were litigated and which could have been litigated. A corollary doctrine of res judicata is the doctrine of collateral estoppel which states that when an issue has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. In effect, T.C.A. Sec. 40-30-112 is a codified form of these two doctrines . . . by which petitioners are bound by previous judgments and determinations.

State v. Blake, No. 1326 (Tenn. Crim. App. at Knoxville, March 19, 1991)(citations omitted). Similarly, in Myers v. State, 462 S.W.2d 265, 269 (Tenn. Crim. App. 1970), this court stated that the appellant could not relitigate questions previously determined adversely to him in two separate habeas corpus cases by state and federal courts of competent jurisdiction. However, in Monts v. State, 455 S.W.2d 627, 629 (Tenn. Crim. App. 1970), this court also held "that the fact that the petitioner did have pending on appeal in the United States Circuit Court of Appeals a petition . . . for a writ of habeas corpus did not deny jurisdiction to the trial court to consider [the appellant's petition for post-conviction relief]." In O'Guinn, No. 02C01-9510-CC-00302, this court also observed that, because the federal district court's decision resolving the appellant's claim was reversed and vacated by the Court of Appeals for the Sixth Circuit and the Supreme Court denied certiorari, the appellant's claim was not previously determined. Accordingly, in light of the current posture of the appellant's habeas corpus proceedings, i.e., on appeal before the Court of Appeals for the Sixth Circuit, we conclude that this issue has not yet been previously determined and may be considered by the post-conviction court.

[15] See also Mills v. Rogers, 457 U.S. 291, 299, 102 S.Ct. 2442, 2448 (1982) (the Constitution recognizes a liberty interest of mental hospital patients in avoiding the unwanted administration of antipsychotic drugs); Bee v. Greaves, 744 F.2d 1387, 1394 (10th Cir. 1984) (plaintiff's liberty interest in avoiding unwanted medication is not absolute); Commonwealth v. Louraine, 453 N.E.2d 437 (Mass. 1983); In re Pray, 336 A.2d 174 (Vt. 1975); State v. Murphy, 355 P.2d 323 (Wash. 1960); State v. Maryott, 492 P.2d 239 (Wash. App. 1971).

psychotropic drugs, it recognized that the substantive protections of the Due Process Clause, under certain circumstances, limit the forced administration of psychotropic drugs to inmates. Id. at 243, 1048.

In Riggins v. Nevada, 504 U.S. 127, 135, 112 S.Ct. 1810, 1815 (1992), the Supreme Court applied the Fourteenth Amendment principles of Harper to the pretrial and trial setting for detained defendants.[16]

Although the Supreme Court's announcement in Riggins was perhaps new to the appellant when he filed his third post-conviction petition, Riggins created neither a new nor novel constitutional rule of law.[17] See Riggins, 504 U.S. at 151, 112 S.Ct. at 1823 (Thomas, J., dissenting) (liberty interest recognized in Harper); see also State v. Van Orden, 647 N.E.2d 641, 644 (Ind.App. 4 Dist. 1995) ("[T]he holding in Riggins does not apply retroactively to Van Orden's trial result." Teague, 485 U.S. at 933, 108 S.Ct. at 1106). Cf. Heffernan v. Norris, 48 F.3d 331, 334 (8th Cir. 1995) (holding that Riggins does not present novel constitutional issues). But see Giannini v. State, No. 02C01-9603-CR-00091 (Tenn. Crim. App. at Jackson, Jan. 15, 1997). Clearly, the liberty interest arising from the involuntary administration of medication was recognized in Harper, which was decided in 1990.[18] The appellant first raised this issue in the state courts in his third post-conviction petition filed in 1995. Accordingly, we find the issue of forced medication

---

[16]The Court expressly noted that "[t]he Fourteenth Amendment affords at least as much protection to persons the State detains for trial [as that protection afforded to inmates]." Id. at 135, 102 S.Ct. at 1815 (citing Bell v. Wolfish, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877 (1979)).

[17]Again, we note that the post-conviction statute of limitations expired in the appellant's case on July 1, 1989. However, the statute of limitations will not bar a post-conviction claim when the ground for relief arises after "the final action of the highest state appellate court to which appeal is taken." Sands, 903 S.W.2d at 301. Thus, in order for a subsequent decision by a court to constitute a later-arising ground for relief, the rule announced therein must constitute a new rule of law that should be applied retroactively. Under both federal and Tennessee law, a new rule of constitutional law exists "when it breaks new ground or imposes a new obligation on the States or the Federal Government . . . . To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." Teague v. Lane, 489 U.S. 288, 301, 109 S.Ct. 1060, 1070 (1989) (emphasis in original); Meadows v. State, 849 S.W.2d 748, 751 (Tenn. 1993).

[18]We find it unnecessary to determine whether Harper created a new constitutional rule. See supra note 2.

barred by the applicable three year statute of limitations.

Notwithstanding our holding that the appellant's forced medication claim is time barred, we are also compelled to note that the instant case does not invoke the due process protections afforded by Harper and Riggins. The Supreme Court, in Riggins, narrowly defined those circumstances under which the due process procedures set forth in Harper are required; the threshold determination being whether the appellant was forcibly medicated, i.e., whether the medication was unwanted, compelled, over objection, or involuntary, and not whether the State may administer medication.[19] Riggins, 504 U.S. at 133, 112 S.Ct. at 1814. Accord Magwood v. State, 689 So. 2d 959, 985 (Ala. Cr. App. 1996), cert. denied, (Ala. 1997); Ferguson v. Singletary, 632 So. 2d 53, 56 (Fla. 1993); Van Orden, 647 N.E.2d at 644; Ex Parte Thomas, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). Although no evidentiary hearing was held in the instant case, the proof in the record from the 1982 post-conviction proceeding does not reflect that the medication received by the appellant was involuntary or forced upon him. Indeed, the findings of fact of the federal district court indicate that the attending psychiatrist informed the appellant as to the nature and identity of the medication prior to its administration. Rickman, 864 F.Supp. at 713. Moreover, there is no indication that the appellant, at any time, objected to being medicated. In a post-conviction petition, the appellant must establish his allegations by a preponderance of the evidence. McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). However, he fails to show anywhere in the record that he was forced to take the medication or that there was even an objection to his being medicated.[20] Thus, we

---

[19]In Riggins, Justice O'Connor, writing for the majority, stated: "The record in this case narrowly defines the issues before us. . . .[O]nce the District Court denied Riggins' motion to terminate use of the Mellaril, subsequent administration of the drug was involuntary." Id.

[20]See, e.g., Magwood, 689 So.2d at 985 (petitioner must assertively object to medication to be involuntary); Ferguson, 632 So.2d at 56-57 (administration of medication voluntary where evidence showed that petitioner received medication in cell, that he was upset when he did not receive medication, that medication was appropriate, and that counsel never requested on the record that medication be discontinued ); Van Orden, 647 N.E.2D at 644 (petitioner never objected to being medicated, thus administration of medication was voluntary); Thomas, 906 S.W.2d at 24 (no objection on record to demonstrate that medication was involuntary).

conclude that the Fourteenth Amendment implications addressed in <u>Harper</u> and <u>Riggins</u> have no application to the case before us.  <u>See</u>  <u>Riggins</u>, 504 U.S. at 133, 112 S.Ct. at 1814.  Accordingly, the appellant's due process contention is without merit.

The remaining issue, thus, involves the appellant's Sixth Amendment right to counsel as observed in <u>Riggins</u>.  "Competence to stand trial is rudimentary, for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so."  <u>Riggins</u>, 504 U.S. at 139-40, 112 S.Ct. at 1817 (Kennedy, J., concurring) (citing <u>Drope v. Missouri</u>, 420 U.S. 162, 171-172, 95 S.Ct. 896, 903-904 (1975)).  <u>Accord</u> <u>Pate v. Robinson</u>, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966);  <u>State v. Stacy</u>, 556 S.W.2d 552 (Tenn. Crim. App. 1977); <u>Mackey v. State</u>, 537 S.W.2d 704 (Tenn. Crim. App. 1975).  However, the mere fact that the appellant was receiving medication during the course of a trial does not *per se* render him incompetent.  <u>See generally</u>  <u>State v. DeAngelis</u>, 511 A.2d 310 (Conn. 1986); <u>State v. Hampton</u>, 218 So.2d 311 (La. 1969); <u>People v. Hardesty</u>, 362 N.W.2d 768 (Mich.App. 1984).  The appellant's competency was previously litigated in his first post-conviction petition. <u>Groseclose and Rickman</u>, No. 9.  As such, this issue has been previously determined and is without merit.

For the foregoing reasons, the judgment of the post-conviction court dismissing the appellant's petition is affirmed.

_____
DAVID G. HAYES, Judge


CONCUR:


_____
JOSEPH M. TIPTON, Judge


_____
WILLIAM M. BARKER, Judge