# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

### Assigned on Briefs November 15, 2011

## DENNIS BURNETT v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Monroe County**
No. 10143     Carroll L. Ross, Judge

---

**No. E2011-00406-CCA-R3-PC-FILED-MAY 1, 2012**

---

The petitioner, Dennis Burnett, appeals the Monroe County Criminal Court's denial of post-conviction relief from his second degree murder conviction. He argues that trial counsel was ineffective in (1) failing to admit at trial a statement of an alleged witness who invoked the Fifth Amendment upon being subpoenaed to testify; (2) advising the jury during voir dire that he, trial counsel, had been previously indicted; (3) failing to respond to a judgment of conviction belonging to Burnett's co-defendant found in the jurors' bathroom during trial; (4) failing to adequately prepare Burnett to testify; (5) failing to investigate and call Michael Gibson as a trial witness; and (6) failing to preserve issues in a motion for new trial thereby securing review on direct appeal. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3   Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Richard Hughes, District Public Defender, Madisonville, Tennessee, for the Petitioner-Appellant, Dennis Burnett.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Senior Counsel, Assistant Attorney General; Robert Steven Bebb, District Attorney General; and James H. Stutts, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Background.** Burnett and his co-defendant, Spencer Coon, accused the victim, Thomas Ratti, also known as "Yankee," of stealing from them. A physical confrontation arose regarding the alleged theft which led to the victim's death. The victim died primarily

as a result of blunt force injuries to the body and asphyxia. The victim's mouth had been tightly gagged with duct tape which caused the asphyxia, and his other injuries were inflicted by either a baseball bat or the barrel or handle of a gun. The defendants were indicted and tried together. Each defendant accused the other of killing the victim. Burnett was convicted of second degree murder, and Coon was acquitted. See State v. Dennis Burnett, No. E2007-02258-CCA-MR3-CD, 2009 WL 2503448, at *1-6 (Tenn. Crim. App., at Knoxville, Aug. 14, 2009), perm. app. denied (Tenn. Mar. 1, 2010).

The proof at trial showed that Burnett and Coon provided statements to law enforcement with differing accounts of what happened after the fight with the victim. In Coon's statement, Coon admitted that he and Burnett hit the victim. However, Coon explained that after the fight, Burnett hit the victim "'right between the eyes with a pistol.'" Id. at 2. Coon described it as "'a pretty good blow. [The victim's] head busted open and started bleeding[.]" Coon told Burnett where to "dump the body" but insisted that the victim was still alive at that time. Coon testified at trial consistently with the above statement and further explained that after the fight, he had "no idea that Burnett would do anything else to the victim." Coon further claimed that Burnett later told him that he, Burnett, had killed the victim.

In Burnett's first statement to authorities, he affirmed that he knew the victim, referred to the incident explained by Coon above as the "'red truck incident[,]'"and said that he saw the victim at a Walmart a few days after the incident. In Burnett's second statement, provided to authorities two days after the first, Burnett said that he saw Coon and the victim inside of Coon's truck. Burnett said that when he confronted the victim about the theft, Coon began to fight the victim. Burnett told agents that Coon said "if [Burnett] told anyone what happened that day, he would duct tape him, Burnett, to a tree, make him watch as he burned his family up in their house." Burnett told agents that he then saw Coon "'taking a tarp or carpet or blue duct tape out of [Coon's] red pickup truck." At this point, Burnett believed the victim was dead. Burnett said that some time later, Coon gave him some knives that the victim had supposedly stolen from Burnett's home. Burnett also reported that Coon said that "'he had put the body in a septic tank or a tank of some type at a place where a house used to be and that no one would find [the body]."

Burnett testified consistently with his second statement at trial. He added that while Coon was beating the victim, the victim asked for help which Burnett declined to provide. Burnett further stated that Coon eventually began to beat the victim with a baseball bat and after several blows Coon "'jumped up in the air, [and] came down on [the victim's chest] with his knees" or "stomped on [the victim's] throat." Burnett said Coon told him to tell the victim's girlfriend that the victim had left town. Coon also reportedly told Burnett to tell

someone who owed the victim money, that "his troubles are over. His debts are paid. Whatever [the victim had] done to him, it's clear."

The following proof is also pertinent to this appeal:

> Ronnie Walden testified that he, Burnett, and Coon were inmates at the Monroe County Jail in October 2003. Walden gave a statement to Agent Brakebill, which was read into the record, recalling how he overheard Coon tell another inmate "a story about what really happened during the murder of [the victim]." According to Walden, before the victim's death Coon gave Burnett an ultimatum: confront the victim about a stolen ring, "or [Coon] was going to believe that [Burnett] had stole[n] a diamond ring from [Coon]." Burnett and Coon then confronted the victim, with Burnett asking the victim questions about the supposed theft, but before the victim could respond, Coon began hitting the victim. Coon then asked for duct tape and a baseball bat. According to Walden, Coon said that he hit the victim "several times" with the bat and told the victim that "this was his last chance to give it up." Coon then duct taped the victim and asked "somebody," not necessarily Burnett, to search the victim for the ring. "Somebody" found the ring on the victim, and then Coon "just went off and came down on [the victim's] chest with his knees." According to Walden, Coon then said that he "blacked out and didn't remember much after that ... the next thing he remember[ed][was] that he was wrapping the body in the tarp." Walden told Agent Brakebill that Coon dumped the victim's body.

> James Walker acknowledged that he gave a statement to a TBI agent recounting conversations he and Coon had while they were inmates in the Blount County Jail. In the statement, Walker said that Coon had told him that while Coon "was on the run because of some meth charges, he and a guy named Burnett were involved in beating a TBI [a]gent to death. I'm not sure if Burnett took part in the beating or not." According to Walker, Coon said that both he and Burnett dumped the agent's body in a cistern. Coon told Walker that "Burnett was going around town bragging to people that they had killed an agent, and that [Coon] was going to kill Burnett too for talking." Walker also said that Coon "was concerned about a second body, but they moved him before I could talk to him more about that."

Id. at *4.

-3-

Following Burnett's conviction for second degree murder, he filed a timely motion for new trial, which was denied. In his direct appeal, Burnett raised several issues that were not explicitly preserved by his motion for new trial. The trial record showed that the new trial motion was timely filed; however, it contained no issues whatsoever. This court deemed Burnett's issues waived for purposes of the direct appeal. Id. at *6. Nevertheless, upon review of Burnett's claims for plain error, we discerned no error and affirmed the judgment of the trial court. Id. at *14.

Burnett filed a pro se petition for post-conviction relief. The post-conviction court appointed counsel and held an evidentiary hearing on the matter.[1] At the beginning of the evidentiary hearing, the State objected to matters not specifically addressed in the petitioner's pro se petition because it had not received an amended petition or notice from post-conviction counsel that there would not be an amended petition. The post-conviction court proceeded with the hearing, noting that no new issues were mentioned in defense counsel's opening remarks.

At the hearing, Burnett testified that he was released on bail before trial and received various papers from counsel regarding this case. Although Burnett met with counsel on several occasions before trial, Burnett said they did not discuss his case. Burnett claimed that he did not receive all the discovery in his case before trial, and that he and counsel never reviewed the discovery together. The night before trial, however, Burnett reviewed his trial testimony with counsel for approximately nine hours. Burnett acknowledged that he had given a statement to Tennessee Bureau of Investigation (TBI) Agent Barry Brakebill, and he reviewed the statement with counsel before trial. Burnett also recalled talking with Detective Mack Williams of the Monroe County Sheriff's Department and providing a recorded statement. Finally, Burnett recalled talking with TBI Agent Malcolm Elrod after Elrod administered a polygraph test, but he did not realize it was a "statement." Before trial, Burnett did not see a written version of the statement he gave Elrod.

Burnett testified that he asked counsel to speak with a number of witnesses before trial, including Michael Gibson and Randall Bledsoe. Burnett believed Gibson witnessed

---

[1]Tenn. Sup. Ct. R. 28 requires appointed or retained counsel "to review the pro se petition, file an amended petition asserting other claims which petitioner arguably has or a written notice that no amended petition will be filed, interview relevant witnesses, including petitioner and prior counsel, and diligently investigate and present all reasonable claims. Section 6(C)(2) of the rule further requires counsel to file a certification indicating that he or she has thoroughly investigated the possible constitutional violations, has discussed the possible constitutional violations with the petitioner, and has raised all non-frivolous constitutional grounds warranted by existing law or a good fair argument for the extension, modification, or reversal of existing law. The record does not include an amended petition or certification of review of the constitutional violations in this case.

Coon beating the victim with a bat. Counsel told Burnett that he "went by [Gibson's] house two or three times and couldn't find him at home." Burnett testified that he and counsel spoke with Bledsoe in the jail during a break on the first day of trial. They discussed a statement that Bledsoe gave Agent Brakebill in which Bledsoe said he, Bledsoe, helped Coon remove the victim's body. Counsel subpoenaed Bledsoe as a trial witness for Burnett, but Bledsoe asserted his Fifth Amendment privilege and did not testify at trial.

Burnett testified that during trial, two pieces of paper were discovered in the jurors' restroom. The juror who found the papers did not read them. Counsel's son brought the papers to counsel during trial, took them into the bathroom, and later left the courthouse. The papers were later determined to be portions of Coon's certified copy of a federal conviction from a prior case. Burnett recalled that counsel was concerned about his son getting in trouble with the court and did not move either for a mistrial or for the replacement of the juror who found the papers.

The papers left in the bathroom during trial were admitted as exhibit three to the post-conviction hearing. The exhibit consists of two sheets of paper, which appear to be standard forms with a number of check boxes and blank sections to be filled. Both identify Spencer Coon as a defendant and are labeled as criminal judgments near the top of the page. The first page bears the heading "Criminal Monetary Penalties" and states that a penalty of $400 is assessed. The second page is entitled "Schedule of Payments" and requires that the money be paid in a lump sum. Additionally on the second page, a box is checked denoting that three firearms must be forfeited.

Burnett testified that trial counsel did not consult with him while counsel was preparing his appeal and that additional legal issues should have been included in the appeal. Burnett was also aware that counsel had been indicted prior to trial. On cross-examination, Burnett acknowledged that he testified at trial. He additionally acknowledged that the papers found in the jurors' bathroom did not pertain to him or any legal proceedings in which he was involved.

Counsel, a veteran criminal defense attorney, testified that he represented Burnett at trial and on direct appeal. He received and reviewed the discovery in this case before trial. Although counsel received the statements that Burnett gave law enforcement officers, he could not recall reviewing Burnett's first statement to law enforcement with Burnett before trial. Counsel saw a transcript of Burnett's statement to Detective Williams and received Burnett's second statement in discovery. Counsel testified that his usual practice was to review all of a client's statements before trial, but he "strongly suspect[ed]" that he did not review the statements with Burnett.

Although counsel attempted to interview Michael Gibson while Gibson was in the hospital, Gibson's mother refused to allow it. Counsel recalled that shortly before trial he received a statement that Randall Bledsoe had provided to Agent Brakebill. In the statement, Bledsoe "repeatedly recanted different fractions of his statements." Bledsoe said that Coon beat the victim to death and that Bledsoe helped dispose of the body. As a result, counsel subpoenaed Bledsoe as a trial witness. Counsel confirmed that he interviewed Bledsoe, a federal prisoner at the time, the morning before trial began, and Bledsoe "gave strongly exonerating information." Before counsel called Bledsoe to testify at trial, however, Bledsoe asserted his Fifth Amendment privilege not to testify. Counsel testified that he did not attempt to introduce the statement under an exception to the hearsay rule. He said, "I should have done that, and I was wrong not to. And I . . . I should have had the wit to think of it quickly." Counsel also acknowledged that he did not proffer any proof concerning what Bledsoe's testimony would have been.

A copy of Bledsoe's handwritten statement to law enforcement officers and a typewritten transcript of the statement were admitted as exhibit five to the post-conviction hearing. In the statement, Bledsoe described the events surrounding the homicide and the disposal of the body. The handwritten statement is marked with notations indicating that portions of the statement are not true, accompanied by the initials "RB." The typewritten transcript is interrupted on two occasions by a note from the law enforcement officer stating, "Randall Bledsoe advised this agent that some parts of this statement were not truthful. This agent advised Randall Bledsoe that we could start over. Randall Bledsoe then gave the following statement." After each of these interjections by the agent, Bledsoe began anew, providing another account.

In the first account, Bledsoe went to Dwight Bright's house to "make some dope." Bright offered Bledsoe drugs in exchange for cleaning blood off the floor and walls of Bright's garage, the result of a fight between Coon and the victim. Bledsoe cleaned the garage. When he later encountered Coon, Coon told him that he had "pistol whipped [the victim] to death" and that the victim's body was in the trunk of Coon's car.

In the second account, Bledsoe was present in Bright's garage when Coon beat the victim. Bright said that "Coon was taking care of a snitch for him." Bledsoe cleaned the garage, and Coon loaded the victim's body in the back of a car. Bledsoe left, and Coon returned to the house where Bledsoe was located. Coon requested Bledsoe's help in disposing of the body, but Bledsoe refused. Bledsoe heard the victim "banging in the car." Coon departed and then returned around 3:00 a.m., "bragging that he dumped the body in a s--t house on some old farm." Coon told Bledsoe that someone was with him, but Bledsoe did not know who.

-6-

In the third account, Bledsoe admitted to assisting Coon dispose of the body. He said that he cleaned the garage while others put the body in a car. Coon forced Bledsoe, who "was the littlest one there," to help him. As Coon and Bledsoe drove toward the farm where they disposed of the body, Bledsoe heard "kicking and scratching" in the back of the car. At the farm, they "threw [the victim] down the hole in the sh-t house." Coon then dropped Bledsoe off. Bledsoe burned the clothes he had been wearing.

Counsel testified that at the time Burnett retained him, counsel had been indicted, but the State later entered a nolle prosequi in January 2005. Counsel informed the jury during voir dire that he had been indicted and that the charges were later dismissed. He explained:

> A jury trial . . . is a matter of impressions; how people assess what is and isn't true, because that's what a jury is. It's the finder of fact. If they – and that's why I brought that up and did so deliberately, because I knew that in the local press, although the charges had been dismissed, my name had been . . . sullied. . . . I don't know the context of [the discussion of the charges during voir dire] because I don't remember, but the context probably was that an indictment is read to a jury, and just because the State alleges something to be true doesn't make it true.

Counsel acknowledged that he did not ask during voir dire whether any of the prospective jurors knew anything about counsel as an individual or about his indictment. He also did not ask whether they had formed an opinion about him. Counsel testified that he could have requested individual voir dire of anyone who indicated a previous knowledge of his situation.

Counsel testified that his son was responsible for leaving the documents found by the juror in the bathroom. Counsel had requested that his son retrieve a certified copy of Coon's federal criminal conviction, and a portion of those documents was found in the bathroom. Counsel's son, when questioned by the trial court, said that he accidentally left the papers there after he used the restroom. He was unaware that the bathroom was reserved for jurors. Counsel was concerned at the time that the jury might believe the documents were a result of counsel's attempt to influence the jury. He did not, however, move for a mistrial or request that the juror who found the documents be replaced.

On cross-examination, counsel testified that he "spent an appropriate and large amount of time" preparing for trial, reviewing discovery materials, and consulting with Burnett. Counsel acknowledged that the documents found in the bathroom did not relate to Burnett.

-7-

Following the evidentiary hearing, the post-conviction court filed a written order denying Burnett's petition. Burnett now appeals the court's denial of post-conviction relief.

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

Vaughn further repeated well-settled principles applicable to claims of ineffective assistance of counsel:

> The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct.

2052, 2064 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697, 104 S. Ct. at 2069).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068).

We note that "[i]n evaluating an attorney's performance, a reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999) (citing Strickland, 466 U.S. at 689, 104 S. Ct. 2065). A court will defer to counsel's tactical or strategic choices as long as they are informed by adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Moreover, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, 466 U.S. at 688-89, 104 S. Ct. at 2065.

The Post Conviction Procedures Act provides the specific requirements for all petitions for post-conviction relief. See T. C. A. § 40-30-101, et. seq. Tennessee Code Annotated section 40-30-106(d) states:

> The petition must contain a clear and specific statement of all grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. Failure to state a factual basis for the grounds alleged shall result in immediate dismissal of the petition. If, however, the petition was filed pro se, the judge may enter an order stating that the petitioner must file an amended petition that complies

with this section within fifteen (15) days or the petition will be dismissed.

At the outset of this case, we are compelled to note that Burnett filed his petition for post-conviction relief on the standard form provided by the State of Tennessee. This form contains a list of several specific claims for relief, which is preceded by the following instructions:

> Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information or by attaching separate pages.
>
> INCLUDE ALL FACTS WHICH SUPPORT THE GROUNDS YOU CLAIM.

Following the list of possible grounds for relief, the form further sets forth the following information:

> THE LIST ABOVE DOES NOT INCLUDE A COMPLETE LIST OF ALL CONSTITUTIONAL VIOLATIONS. YOU MAY ADD ANY OTHERS YOU DEEM APPROPRIATE. ATTACH A SEPARATE SHEET OF PAPER LISTING EACH CONSTITUTIONAL VIOLATION THAT YOU CLAIM, LIST EACH AND EVERY FACT YOU FEEL SUPPORTS THIS GROUND. EXPLAIN IN DETAIL HOW YOU ARE PREJUDICED BY THE VIOLATION AND WHY YOU ARE ENTITLED TO RELIEF. BE SPECIFIC. . . .

On the petition form, Burnett marked "yes" for "the denial of effective assistance of counsel" and "other grounds." However, Burnett did not include any facts in support of any of these grounds. There was also no amendment to the petition. Ordinarily, under these circumstances, the petition should have been dismissed because Burnett failed to comply with the rules of the Post Conviction Act. Id. § 40-30-106(d). Nevertheless, in the interest of justice, we will review the issues presented.

**I. Failure to Admit Statement.** Burnett argues that counsel was ineffective for failing to admit a statement given by Bledsoe to law enforcement officers under Tennessee Rule of Evidence 804(b)(3) as a statement against interest. He asserts that Bledsoe's statement was exculpatory for Burnett and, as a result, counsel's failure to admit it was

-10-

deficient and caused Burnett prejudice at trial. The State responds that Burnett has failed to demonstrate by clear and convincing evidence that counsel was ineffective. We agree with the State.

Counsel testified at the evidentiary hearing that he subpoenaed Bledsoe to testify at trial. However, Bledsoe asserted his Fifth Amendment privilege not to testify. Counsel said that he did not attempt to offer Bledsoe's statement into evidence, but counsel said that he should have done so. He also did not make a proffer of proof. Bledsoe's statement, introduced as an exhibit to the post-conviction hearing, demonstrated that he admitted lying a number of times in giving the statement and provided three accounts of his involvement in the homicide.

The post-conviction court, after reviewing Bledsoe's statement, determined that the statement would not have been admissible under the hearsay exception for a statement against interest, and that counsel was not ineffective for failing to move to admit it. The court considered the provisions of Tennessee Rule of Evidence 804(b)(3), which permits the use at trial of a statement that "at the time of its making . . . so far tended to subject the declarant to civil or criminal liability . . . , that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Tenn. R. Evid. 804(b)(3). The post-conviction court noted the several recantations in Bledsoe's statement and reasoned:

> It seems axiomatic to the court that the threshold requirements of the hearsay exception provisions of Tenn. R. Evid. 804(b)(3) presuppose that an element of truthfulness is apparent on the face of the statement itself.
>
> This court can think of nothing that so readily negates the "apparent truthfulness" of a statement than a repeated assertion by the declarant in the statement itself that what he has just said is a "lie." It can hardly be said that the requirement that "a reasonable person in the declarant's position would not have made the statement unless believing it to be true" is applicable to this particular example when, in fact, the declarant repeatedly indicates that what he has just said is, in fact, not true.

Because the statement was inadmissible, according to the court, counsel was not ineffective for "not exert[ing] greater efforts to have it admitted at trial."

After thorough review of the record, we conclude that Burnett failed to produce clear and convincing evidence that counsel was ineffective based on a failure to admit Bledsoe's statement at trial. In the context of such claims of ineffective assistance of counsel, a court determines deficient performance by considering whether the evidence that was not

-11-

introduced at trial was both admissible and material. See Pylant v. State, 263 S.W.3d 854, 869, 871-73 (Tenn. 2008) (considering whether trial counsel was ineffective in failing to call at trial the alleged true culprit or others who witnessed her inculpatory statements). Deficient performance in this regard must also result in prejudice. Id. at 874-75.

Here, the post-conviction court determined, and we agree, that Burnett failed to demonstrate counsel's deficient performance because Bledsoe's statement was inadmissible. According to Rule 801(c), hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Rule 802 states that "hearsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. As the Tennessee Supreme Court has noted, because "'the rule against hearsay is considered to be a rule of reliability,'" exceptions allow for the admissibility of hearsay "[w]here sufficient indicia of reliability are present." State v. Kiser, 284 S.W.3d 227, 264 (Tenn. 2009) (quoting State v. Brown, 29 S.W.3d 427, 431 (Tenn. 2000)). Statements against interest are admissible under Rule 804(b)(3) because "the actual fear of punishment reasonably held by a confessing perpetrator is assumed to be overridden by some other concern of such magnitude that it renders the confession reliable." Id. at 265. Where, as here, the statement against interest indicates that the declarant repeatedly lied in the process of giving the statement and disavowed significant portions of the statement, namely the extent of his own involvement, we conclude that the statement lacks the indicia of reliability contemplated by Rule 804(b)(3). See State v. Charles E. Lakins, No. 03C01-9703-CR-00085, 1998 WL 128842 *3-4, (Tenn. Crim. App., at Knoxville, March 24, 1998) (holding that statement of witness deemed "unavailable" due to invocation of Fifth Amendment not admissible under Rule 804(b)(3) because it was inconsistent, fabricated, and unreliable). Bledsoe's statement was not admissible as a statement against his penal interest.[2] Consequently, we conclude that counsel was not ineffective for failing to introduce the statement as evidence at trial.

Even if the statement were admissible, Burnett has failed to demonstrate that he was prejudiced by counsel's failure to introduce it at trial. As an initial matter, Burnett does not state how he was prejudiced by the exclusion of Bledsoe's statement, forcing us to presume its significance to this case. With this said, the portions of the statement that were not designated as "a lie" revealed, among other things, that Coon told Bledsoe that he "pistol whipped the victim to death." Bledsoe said that Coon showed him a 9 millimeter or 45

---

[2]Nor were the statements attributed to Coon contained within Bledsoe's statement admissible. Bledsoe's statement contained statements that Coon told someone other than Bledsoe and that person later told Bledsoe. In addition to the rationale for exclusion expressed above, the Bledsoe statement, as triple hearsay, is also inadmissible.

caliber pistol with blood on it. Bledsoe further said that Coon told him the victim was an undercover agent and that "Coon was taking care of a snitch" for someone else. Bledsoe also said he was scared of Coon and helped Coon dispose of the body. Significantly, the statement did not mention or implicate Burnett.

In our view, two other witness statements were admitted at trial that established essentially the same evidence as Bledsoe's statement; namely, that Burnet was not involved in the killing. James Walker recounted conversations he and Coon had while inmates together. Walker said that Coon "and a guy named Burnett were involved in beating a TBI [a]gent to death. [He was] not sure if Burnett took part in the beating or not." Ronnie Walden also stated that Coon told him that he, Coon, beat the victim with a baseball bat and that "'somebody' not necessarily Burnett searched the victim for the ring." Walden further stated that Coon dumped the victim's body. The admission of these statements at trial served the same purpose as Bledsoe's statement had it been admitted at trial, and as noted, Bledsoe's statement was plagued with credibility problems. In spite of hearing this proof, the jury convicted Burnett as charged. Accordingly, Burnett has failed to demonstrate a reasonable probability that the outcome of the trial would have been different. See Goad, 938 S.W.2d at 370 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068). Burnett is not entitled to relief on this issue.

**II. Comment During Voir Dire.** Burnett argues that the combined effect of counsel's comment during voir dire regarding counsel's own indictment and counsel's involvement with the papers found in the bathroom created a conflict of interest, which resulted in ineffective assistance of counsel per se. Burnett asserts that counsel feared contempt charges or other disciplinary action and therefore could not possibly render effective assistance of counsel. The State responds that Burnett waived this claim for failure to assert it before the post-conviction court. We agree with the State.

As previously discussed, Burnett did not allege this ground for post-conviction relief in his petition. He also failed to orally raise it before the post-conviction court. In addition, the post-conviction court order denying relief did not address this issue. "Issues not addressed in the post-conviction court will generally not be addressed on appeal." Walsh v. State, 166 S.W.3d 641, 645-46 (Tenn. 2005) (citing Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997)). We are therefore precluded from review because this claim has been waived.

**III. Papers Found in Jurors' Bathroom.** Burnett argues that trial counsel was ineffective based on a failure to move for either a mistrial or the removal of the juror who found the documents in the jurors' bathroom. Because counsel did not do so, according to Burnett, he was denied his right to trial by an impartial jury. The State contends that Burnett

-13-

has failed to prove either deficient performance or prejudice by clear and convincing evidence. We agree with the State.

At the post-conviction hearing, counsel testified that his son had obtained a copy of Coon's federal conviction. Counsel's son inadvertently left two pages of Coon's conviction document in the jurors' bathroom. Burnett testified that the juror informed the court that she did not read the papers she found. The two pages, admitted as an exhibit at the hearing, indicated a monetary penalty of $400 and a requirement to forfeit three firearms. Counsel testified that he was concerned about the effect this incident may have had on the jury.

The post-conviction court found that Burnett failed to prove that he received the ineffective assistance of counsel based on the documents found in the bathroom. The court stated:

> Upon examination of the papers found by the juror, it was evident that the pages said very little about Spencer Coon and nothing about Dennis Burnett. . . . [T]he court did not find that there was any malicious intent or motive on the part of the son in leaving these pages in the sink. . . . All of these issues were discussed outside the hearing of the jury, and the court could not find then, and cannot find now, that the papers would in any way have an influence on the jurors. This issue is without merit and cannot be used as grounds for Post Conviction Relief based on ineffective assistance of counsel.

Upon our review of the record, we agree with the post-conviction court and conclude that Burnett has not produced clear and convincing evidence that counsel was ineffective in failing to move for a mistrial or for the juror's removal. Burnett has not produced evidence of any likelihood that the outcome at trial would have been different had counsel responded to the incident differently. He has not made any showing that the papers or their discovery in the bathroom swayed the jury or that counsel's actions prejudiced him as a result. Burnett is not entitled to relief on this issue.

**IV. Failure to Prepare Burnett's Trial Testimony.** Burnett asserts that counsel was ineffective based on a failure to review with Burnett before trial two of his statements to law enforcement officers. He maintains that he was inadequately prepared to testify in his own defense and was thereby prejudiced. The State responds that Burnett has failed to demonstrate deficient performance. We agree with the State.

Burnett testified at the hearing that he reviewed his statement to Agent Brakebill with counsel before trial. He said that he did not review his other two statements with counsel. He remembered talking with both Detective Williams and Agent Elrod, but he did not know

that he gave a "statement" to Agent Elrod. Burnett remembered meeting with counsel the day before trial from approximately 1 p.m. to 10:30 or 11 p.m. Counsel testified that he received all of Burnett's statements to law enforcement officers before trial and that he shared discovery with Burnett as he received it. Counsel's usual practice was to review such statements with his clients, but counsel suspected that he did not do so with Burnett.

Upon review of the record, we conclude that Burnett has not proven by clear and convincing evidence that counsel was ineffective in failing to prepare him to testify at trial. Although Burnett adduced evidence that counsel may not have reviewed the statements with Burnett before trial, the record reflects that counsel provided all of the statements to Burnett before trial. Additionally, counsel and Burnett spent approximately ten hours preparing together the day before trial began. Even if we were to conclude that counsel was deficient in failing to review the statements with Burnett, Burnett has failed to show any resulting prejudice. As a result, Burnett is not entitled to relief on this issue.

**V. Failure to Investigate and Call Gibson.** Burnett argues that counsel was ineffective in failing to investigate and call as a trial witness Michael Gibson. The State responds that Burnett did not call Gibson to testify at the post-conviction hearing and cannot prove that counsel was ineffective in this regard. We agree with the State.

Burnett testified at the post-conviction hearing that he believed Gibson witnessed Coon beating the victim. Counsel testified that he attempted to interview Gibson while Gibson was at the hospital. Counsel was unable, however, because Gibson's mother prevented him from speaking with Gibson. The post-conviction court determined, and we agree, that counsel was not ineffective in failing to interview or call Gibson at trial based on counsel's unsuccessful efforts to question him before trial. Furthermore, as the State asserts, Burnett's failure to call Gibson at the post-conviction hearing precludes a finding of prejudice. See Black v. State, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990) (holding that a petitioner fails to establish prejudice "unless he can produce a material witness who (a) could have been found by a reasonable investigation and (b) would have testified favorably in support of his defense if called"). Burnett is not entitled to relief on this issue.

**VI. Failure to Preserve and Present Issues for Direct Appeal.** Interspersed throughout Burnett's brief are arguments that trial counsel failed to preserve all the above issues for direct appeal by not challenging them at trial and that counsel failed to present the same issues on direct appeal.[3] He asserts that the failures to preserve the issues and to

_____

[3]The heading for each of Burnett's issues in his brief includes the sentence, "In the alternative, trial counsel erred in failing to present this issue for appeal, which caused the issue to be waived and resulting

(continued...)

present them on direct appeal were presumptively prejudicial. The State provides a limited response to this argument and asserts that because Burnett cannot prove prejudice at trial, he cannot prove that counsel's actions resulted in prejudice on appeal. We conclude that Burnett is not entitled to relief on this issue.

We initially observe that aside from a bare assertion that such conduct by counsel constitutes ineffective assistance, Burnett has failed to argue this issue. He does no more than repeatedly cite Wallace v. State for the proposition that prejudice is presumed when counsel fails to file a timely motion for a new trial. 121 S.W.3d 652, 658 (Tenn. 2003) (presuming prejudice when counsel failed to file a timely motion for a new trial because "[c]ounsel's abandonment of his client at such a critical stage of the proceedings resulted in the failure to preserve and pursue the available post-trial remedies and the complete failure to subject the State to the adversarial appellate process" (citing United States v. Cronic, 466 U.S. 648, 659 (1984)). To be clear, unlike Wallace, the record clearly shows that trial counsel filed a motion for new trial within the required thirty- day time period. However, the new trial motion did not specify any issues for review, and counsel did not file an amended motion for new trial. The trial record further shows that a hearing was held by the trial court which addressed issues orally raised by the filing of the motion for new trial. Because these issues were not included within the new trial motion, this court deemed them waived on direct appeal. Significantly, this court reviewed the issues which were included on direct appeal, and discerned no plain error.

Review of this issue is further complicated because none of the issues which the Petitioner contends should have been raised on direct appeal were specifically raised in his pro se petition for post-conviction relief. The extent of the petitioner's claim is shown in response to questions 14 and 15 within his pro se petition for post-conviction relief:

> 14. If you did not raise the grounds you raised here in your original prosecution and on your appeal from that prosecution, explain why your claim in this case has not been waived for failure to raise it on appeal. [Trial Counsel] failed to raise.

> 15. If you have previously filed a petition, application, or motion with respect to the judgment(s) in any court, explain why your claim in this case has not been waived for failure to raise it in that prior proceeding. If the claim was

---

[3](...continued)
in prejudice to the appellant." However, the body of his arguments passingly discusses both presenting the issues on appeal and preserving them at trial for appeal.

raised, explain why your claim is not previously determined. [Trial Counsel] said he could not remember to raise any issues needed.

At the beginning of the post-conviction hearing, counsel orally stated to the court that trial counsel was ineffective "by his failure to raise certain specific grounds in the motion for new trial that should have been contained in the motion for new trial. So, therefore, because they were not raised in the motion for new trial, they were waived when [the petitioner's] case was reviewed by the Court of Criminal Appeals." Unfortunately, counsel never identified the "certain specific grounds" that should have been included in the new trial motion. In fact, as much as we can glean from the record, the issues that counsel argued should have been included during the post-conviction hearing were different than the issues raised in the Petitioner's direct appeal.

In any event, inasmuch as Burnett contends that the issues addressed in the direct appeal serve as grounds for ineffective assistance, we disagree. This court previously determined in the Petitioner's direct appeal that those issues did not constitute plain error. Douglas Marshall Mathis v. State, No. M2006-02525-CCA-R3-PC, 2008 WL 1850800, at *10-11 (Tenn. Crim. App. 2008), perm. app. denied (Tenn. Oct. 27, 2008); see also Owens v. State, No. M2009-00558-CCA-R3-PC, 2010 WL 1462529 *6 (Tenn. Crim. App. 2010), perm. app. denied (Tenn. Sept. 22, 2010)(concluding that ground supporting ineffective assistance claim that was reviewed for plain error on direct appeal was subject to "essentially the same standard" in post-conviction proceedings). To the extent that Burnett claims that trial counsel was ineffective for failing to pursue any other issue on direct appeal, the record shows that Burnett failed to identify, develop, or offer evidence of prejudice regarding this issue at the evidentiary hearing. He further failed to argue or demonstrate that the claims that allegedly should have been presented on appeal would have succeeded, as required to prove deficient performance and prejudice for such a claim. Carpenter v. State, 126 S.W.3d 879, 887-88 (Tenn. 2004).

Accordingly, we conclude that Burnett has not proven by clear and convincing evidence that counsel was ineffective in failing to preserve or present issues for direct appeal. Additionally, we have already determined that counsel's alleged errors at trial, acts which if counsel had done would have preserved the issues for appeal, did not inure to Burnett's prejudice. Burnett is not entitled to relief.

_____
CAMILLE R. McMULLEN, JUDGE