# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

Assigned on Briefs November 1, 2016

## RAYMOND BUFORD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 09-02882          Glenn Ivy Wright, Judge**

_____

**No. W2016-00514-CCA-R3-PC  -  Filed May 9, 2017**
_____

The Petitioner, Raymond Burford, was convicted of premeditated first degree murder and received a life sentence. He appeals the post-conviction court's denial of relief arguing that trial counsel was ineffective by (1) recalling a witness knowing that she would offer evidence of the Petitioner's prior bad acts that had not been introduced in the State's case in chief and (2) failing to adequately research diminished capacity as a defense. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and J. ROSS DYER, JJ., joined.

Samuel J. Muldavin (on appeal) and Robert C. Brooks (on petition for post-conviction relief), Memphis, Tennessee, for the Petitioner, Raymond Buford.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lora Fowler, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

On the night of February 14, and early morning hours of February 15, 2009, after dragging his wife, the victim, by force from a Valentine's Day party, the Petitioner stabbed her nine times and killed her. The victim's death was particularly cruel with "one of the stab wounds to [her] head pass[ing] through her right eye, 'through the skull behind the eye, the bone of the orbit behind the right eye and penetrated, partially, into the brain on the right side.'" The victim's and the Petitioner's two sons, ages fifteen and seventeen years old, as well as three other friends of their family witnessed the events leading up to the victim's death. Significantly, the Petitioner provided a statement to

police admitting to stabbing and killing the victim. A Shelby County jury subsequently convicted the Petitioner of first degree premeditated murder and sentenced him to life imprisonment. State v. Raymond Buford, No. W2011-00368-CCA-R3CD, 2012 WL 4340657, at *1 (Tenn. Crim. App. Sept. 24, 2012). The Petitioner appealed his conviction, which was affirmed by this court. Id.

At trial, the defense primarily relied upon showing the Petitioner's diminished capacity at the time he killed the victim. Dr. Hutson, an expert in the field of forensic psychology, testified that "he found [the Petitioner] competent to stand trial, but that Defendant suffered from diminished capacity on February 15, 2009, when he killed the victim. He said that in the Petitioner's case, there were several "issues working or placing undue pressure" on the Petitioner. Dr. Hutson characterized the factors affecting Defendant as "situational stress," and noted that the Petitioner had never been diagnosed with or treated for depression. He believed that the Petitioner suffered from "at least, dysthymia, which is a level of depression which is not incapacitating, or maybe at times, a more significant depression, he was never incapacitated by depression, though." Raymond Buford, 2012 WL 4340657, at *11.

> A letter by Dr. Hutson, addressed to the court and dated September 9, 2009, contained the following statement:
>
> With regard to [the Petitioner's] mental condition at the time of the alleged offense, it is the opinion of the staff that at the time of the commission of the acts constituting the alleged offense(s), severe mental disease or defect did not prevent the defendant from appreciating the nature or wrongfulness of such acts pursuant to T.C.A. § 39–11–501.
>
> A subsequent letter to the trial court dated March 18, 2010, contained the following: "[The Petitioner] appears to have some diminished capacity at the time of this offense. His functioning was impaired by a combination of intoxication (alcohol), depression, and significant situational stress."

Id., 2012 WL 4340657, at *13.

On August 14, 2013, the Petitioner filed a pro se petition for post-conviction relief. On September 13, 2013, the State filed its response denying the Petitioner's allegations of ineffective assistance of counsel. On September 17, 2013, the post-conviction court appointed post-conviction counsel, who later filed a supplemental petition for post-

conviction relief.[1]   A post-conviction hearing was held on July 25, 2015, and subsequently denied by order on February 24, 2016.  It is from this order that the Petitioner now appeals.

## ANALYSIS

In this appeal, the Petitioner argues that he received ineffective assistance of counsel when trial counsel recalled Sherri Holpe, the victim's sister, as a defense witness "knowing that she would offer evidence of prior bad acts that had not been introduced in the State's case in chief."  In response, the State contends that trial counsel made a tactical decision to recall Holpe in order to lay a foundation for the Petitioner's diminished capacity defense.[2]   Moreover, at the time trial counsel recalled Holpe as a witness, trial counsel was unaware that the State would be able to introduce additional 404(b) evidence.  Secondly, the Petitioner claims that he received ineffective assistance of counsel based on trial counsel's "fail[ure] to adequately research diminished capacity so as to effectively pursue diminished capacity, his stated affirmative defense."  The State argues that this issue is waived because the Petitioner failed to raise it in his pro se petition, his supplemental petition, or at the post-conviction hearing.  For the reasons that follow, we agree with the State, and conclude that the Petitioner is not entitled to relief.

Our analysis of these issues is set by the following well established legal framework.  Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right.  T.C.A. § 40-30-103.  The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve.  The appellate court's review of a legal issue, or of a mixed question of law or fact such as

---

[1] Post-conviction counsel initially filed a supplemental petition which was objected to by the State because it contained erroneous factual allegations that did not occur during the Petitioner's trial. Following the State's motion to strike, post-conviction counsel filed a second petition, which contained the grounds for the instant appeal.

[2] We acknowledge that we do not use titles when referring to every witness.  We intend no disrespect in doing so.  Judge John Everett Williams believes that referring to witnesses without proper titles is disrespectful even though none is intended.  He would prefer that every adult witness be referred to as Mr. or Mrs. or by his or her proper title.

a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases. Vaughn, 202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

A review of Sherri Holpe's trial testimony is necessary to resolve the Petitioner's first issue, whether the Petitioner was denied effective assistance of counsel when trial counsel recalled Sherri Holpe as a defense witness. As provided in this court's opinion

- 4 -

on direct appeal, Holpe, a witness for the State, testified on direct-examination as follows:

Sherri Holpe testified that she last saw the victim, Valerie Wilson, alive on February 15, 2009, between 7:00 and 8:00 a.m. She explained that the victim, who was her younger sister, had a birthday/Valentine party for her which began on February 14, 2009, and lasted into the early morning hours of February 15, 2009. Ms. Holpe testified that the victim served as the bartender at the party, which was held at Ms. Holpe's house located at 2985 Semmes Street in Memphis, and [the Petitioner], the victim's husband, was also there. She said that the victim and [the Petitioner], who lived near her at 2971 Semmes Street, left the party between 3:00 and 4:00 a.m., and the victim later returned. Ms. Holpe testified that the victim left the party again at some point to wake [the Petitioner] up to go to work, and the victim returned with an air mattress and continued mingling with some guests who were still there. Ms. Holpe testified that [the Petitioner] returned to her house at some point and told the victim to "[c]ome here." When the victim told [the Petitioner] that she did not want to talk to him, he grabbed her and pulled her outside. The two talked, and [the Petitioner] left. Ms. Holpe testified that [the Petitioner] returned and pulled the victim out of the house again and into the driveway. Ms. Holpe and several others went outside and asked [the Petitioner] to leave the victim alone. Ms. Holpe testified that [the Petitioner] continued to pull the victim across the street to their house. She said that the victim was yelling, "Somebody get me a phone, somebody give me a phone." Ms. Holpe attempted to dial 9–1–1 on her cell phone, but the phone was not working. She then went inside to get another phone but by the time she got back outside, the victim was dead.

Ms. Holpe testified that the victim met [the Petitioner] approximately eighteen years prior to the victim's death. She indicated that the victim and [the Petitioner] frequently separated during their eighteen-year relationship, and the victim was the one who always left the house. Ms. Holpe thought that [the Petitioner] was the biological father of three of the victim's six children, but [the Petitioner] helped take care of all the children. She said that there was someone at the party who the victim had been accused of dating; however, Ms. Holpe testified that the victim was not dating that person. Ms. Holpe testified that her children and Sharese McCray's children were at the victim and [the Petitioner's] house during the party.

After the close of the State's case-in-chief, Holpe was recalled as a witness by the defense.[3]  Following her direct examination by the defense, the State proceeded with its cross-examination of Holpe.  Before it concluded its examination, the State requested a recess to proffer testimony from Holpe concerning prior bad acts of the Petitioner against the victim in addition to those previously determined to be admissible by the court at a pre-trial hearing.  The State specifically advised the trial court that it became aware of new information that morning and needed to file "an amended 404(b) motion."  The trial court allowed the State to proffer testimony from Holpe concerning several prior bad acts.  Following her proffer testimony, trial counsel objected to the amended 404(b) motion, arguing that it was "a surprise" and that the State had already rested its case.  The trial court initially overruled trial counsel's objection.  However, the trial court allowed the State to file a written amended 404(b) motion and permitted trial counsel additional time over the weekend to investigate the allegations by Holpe.

The following Monday, another hearing was held regarding the State's amended motion.  In their written motion as well as orally argued before the court, the State argued the admissibility of five prior bad acts: (1) a 1991 or 1992 aggravated assault against the victim in which the Petitioner pointed a gun at the victim's head and told her, "You're going to make me kill you[;]"; (2) a 2000 aggravated assault against the victim and others wherein the Petitioner drove outside a home and fired two shots; (3) an altercation in a hot tube wherein the Petitioner removed the victim's shirt in front of family members, forcibly pulled the victim inside a house; (4) a 2006 incident wherein the Petitioner assaulted the victim; and (5) a 1998 homicide conviction for which the Petitioner received judicial diversion.  Except for the homicide conviction, the State argued, and the trial court ultimately agreed, that these incidents were admissible to prove the Petitioner's motive, intent, and lack of mistake in killing the victim.  The trial court limited Holpe's testimony to only those instances she witnessed, which included the Petitioner's pointing the gun to the victim's head and the altercation in the hot tub.

When the trial resumed, Holpe testified "that the victim's relationship with the Petitioner began in the early 1990's when the victim was fourteen years old."  She described two times the Petitioner previously threatened to kill the victim.  First, the Petitioner drove Holpe and the victim to his grandmother's funeral.  Holpe said that the Petitioner walked over to his grandmother's grave and cried.  He then walked back to the car, pulled out a gun, pointed it at the victim, and said, "You're going to make me kill

---

[3] It should be noted that the Petitioner's brief flatly misstates when trial counsel became aware of the newly discovered prior bad act testimony.  The Petitioner's brief is grossly misleading on this issue, stating "before Ms. Holpe could take the witness stand, counsel for the State informed the court that he had just become aware of the information[.]"  It continues, "Notwithstanding having heard the damaging testimony that Ms. Holpe would inevitably provide were she to be called to testify, defense counsel did, in fact call her to the stand."

you." Holpe testified that the Petitioner put the gun back down and began to cry again. The second incident was at a family gathering when everyone got into the hot-tub. She said that the Petitioner unplugged the hot-tub, and the victim plugged it back in. Holpe testified that the Petitioner then reached over and "snatched" the victim out of the hot-tub. She said that the victim resisted, and the Petitioner removed her shirt in front of the family members. He then pulled her into the house, and Holpe heard them arguing.

At the time of the Petitioner's trial, trial counsel, a former prosecutor and public defender, had been in private practice for over thirty-five years. Two additional attorneys, a law student, and an investigator assisted him with the Petitioner's case. At the post-conviction hearing only the Petitioner and trial counsel testified. The Petitioner testified generally concerning the additional 404(b) evidence introduced during the State's cross examination of Holpe. He was aggrieved because trial counsel recalled Holpe; however, he did not provide any additional testimony or proof on this issue.

Although trial counsel testified at the post-conviction hearing, he was not initially questioned by post-conviction counsel about the newly discovered 404(b) evidence.[4] On cross-examination by the State, the prosecutor focused trial counsel on the prior bad act testimony Holpe provided. Trial counsel stated

> [Sherri Holpe] . . . was an important witness. . . . I utilized her to lay the foundation for the incident that happened that night. She was the most person [sic] who I determined had the clearest vision. I don't think she drank. I'm not sure whether she was . . . intoxicated or not. And therefore, she was used to lay the groundwork for the scene immediately prior to the alleged incident.

In addition, trial counsel emphasized his success at excluding the Petitioner's prior bad act for homicide. In response to re-questioning by post-conviction counsel as to why trial counsel could not have laid a foundation with Holpe during her initial testimony, trial counsel stated

> [Sherri Holpe] knew that the incident was tragic and the party incident was something that I believe would have impaired or clouded any person's vision as to stress and the relationship and the incident that occurred that night. And so her testimony was relatively clear and as I indicated I used her primarily to lay the foundation because I think that's the incident where our best efforts were made as to him having diminished capacity or him

---

[4] Post-conviction counsel focused on the initial prior bad acts which were litigated pre-trial and admitted through the testimony of the Petitioner's sons at trial, not by Holpe.

being found not guilty by reason of insanity, having been provoked, having been harassed, intimidated and empty beer cans were thrown at him. . . .

Upon our review of the record, we agree with the post-conviction court, and conclude that the Petitioner is not entitled to relief. As an initial matter, trial counsel testified that he recalled Holpe to aid their theory of the Petitioner's diminished capacity at the time he killed the victim. Holpe was the only witness who was not intoxicated at the party. From trial counsel's perspective, she was the only witness who could credibly establish the hostile environment the Petitioner was experiencing before he killed the victim. Moreover, the trial transcript clearly shows that once the State attempted to introduce the new prior bad act evidence, trial counsel immediately and strenuously objected. During his objection, trial counsel noted his surprise because Holpe had previously testified that she was not aware of any prior violent acts of the Petitioner against the victim. The trial court assured trial counsel that he would be able to question Holpe about it, but overruled the objection. Trial counsel could not have foreseen that Holpe was going to change her testimony regarding the prior bad acts. Moreover, had trial counsel known prior to recalling Holpe as a defense witness that the newly discovered 404(b) evidence was going to be offered and admitted, it is highly unlikely Holpe would have been recalled as a defense witness. Under these facts and circumstances, the Petitioner has failed to establish trial counsel's deficient performance or prejudice to his case as a result.

The Petitioner's second claim, as stated in his brief, argues that he received ineffective assistance of counsel "when, by means of his examination of his expert witness, [trial counsel] failed to adequately research diminished capacity so as to effectively pursue diminished capacity, his stated affirmative defense." We initially agree with the State, and conclude that the Petitioner's issue, as presented in his brief, has been waived. See T.C.A. § 40-30-104(e) (noting that "the petitioner shall include allegations of fact supporting each claim for relief set forth in the petition"). This argument was not included in either of the Petitioner's petitions, nor was it presented to the post-conviction court. Id., see also Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997) ("Generally, with respect to those seeking post-conviction relief, this court will not address post-conviction issues that were not raised in the petition or addressed in the post-conviction court.")(internal citations omitted). However, the Petitioner properly included in his pro se petition and his supplemental petition whether trial counsel failed to prepare and present a viable defense.

As we understand the substance of this issue, the Petitioner claimed at the post-conviction hearing that trial counsel was ineffective in allowing Dr. Hutson to testify at trial that the Petitioner was competent to stand trial while simultaneously allowing Dr. Hutson to testify as to his diminished capacity at the time of the offense. The Petitioner

believed that the jury may have been confused by Dr. Hutson's testimony. Other than the Petitioner's testimony, there was no proof offered at the post-conviction hearing supporting this issue. The post-conviction court determined, and we agree, that the jury would not have been confused by Dr. Hutson's testimony. We further conclude that the Petitioner has failed to demonstrate ineffective assistance of counsel based on trial counsel's failure to prepare and present a viable defense in this case. The record shows that trial counsel, assisted by two other lawyers, a law student, and an investigator, mounted a vigorous defense. The Petitioner has failed to establish deficient performance or prejudice arising therefrom. He is not entitled to relief.

## CONCLUSION

Based on the above reasoning and analysis, the judgment of the post-conviction court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE