IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 15, 2020

## ADAM DAVIS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. CC-2015-CR-611      William R. Goodman, III, Judge**

_____

### No. M2019-01017-CCA-R3-PC
_____

The Petitioner, Adam Davis, sought post-conviction relief alleging ineffective assistance of counsel after he was convicted of two counts of aggravated sexual battery and received an effective sentence of eight years' imprisonment. The post-conviction court denied relief. On appeal, the Petitioner asserts that his right to counsel was violated by trial counsel's failure to investigate and call character witnesses and failure to investigate and present medical evidence regarding his erectile dysfunction. He also urges this court to remand the case with an order for the post-conviction court to make further factual findings and credibility determinations. After a thorough review of the record, we conclude that the post-conviction court's findings are adequate to permit review and that the post-conviction court did not err in determining that the Petitioner's right to counsel was not violated. Accordingly, the post-conviction court's judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Adam Davis.

Herbert H. Slatery III, Attorney General and Reporter; Clark B. Thornton, Senior Assistant Attorney General; John W. Carney, Jr., District Attorney General; and Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL HISTORY

### Trial

The Petitioner was charged with two counts of rape of a child and five counts of aggravated sexual battery for acts committed between April and December 2014 against his girlfriend's daughter, who was six to seven years old at the time of the crimes. After a bench trial, the Petitioner was convicted of two counts of aggravated sexual battery and acquitted of the remaining charges.

At trial, the victim marked on one illustration the areas of her body where the Petitioner had inappropriately touched her and marked on another illustration the body parts with which the Petitioner had inappropriately touched her. She confirmed that she had been truthful in her forensic interview. Regarding the counts that resulted in the Petitioner's convictions, the victim told the forensic interviewer that her hand went "up and down" on the Petitioner's "private one" and that the Petitioner would rub and pat his private area on her private area. *State v. Adam Davis*, No. M2017-00293-CCA-R3-CD, 2018 WL 1468819, at *3 (Tenn. Crim. App. Mar. 26, 2018). The victim gave other explicit descriptions of sexual activity, including oral sex and ejaculation. *Id.* The victim was given a forensic examination, and the pediatric nurse testified that no physical evidence of abuse was found but that she would not expect any physical evidence given the allegations.

The victim's mother testified that in 2014, she was working two jobs while the Petitioner, who was recovering from back surgery, took care of her children. After the abuse was revealed in January 2015, she and her children immediately left the home she shared with the Petitioner. While the victim's mother no longer resided with the Petitioner, she acknowledged that she maintained a relationship with the Petitioner for a period of months after she learned of the abuse. She testified that the Petitioner gave her financial support and rides to work and that she had difficulty "detaching [her] feelings" for him. She acknowledged in particular that she was still sexually active with the Petitioner for a period of months after she learned of the abuse.

The Petitioner denied abusing the victim and suggested that the victim invented the allegations because she missed spending time with her mother. He also suggested that the victim could have attained sexual knowledge by witnessing sexual activity between her mother and the Petitioner. In particular, the Petitioner testified that, two nights before the victim made the allegations, he had been engaged in sexual activity at 2:00 or 3:00 a.m. with the victim's mother. He testified specifically that the sexual

activity was "usually…manual sex…into oral sex, into actual intercourse."  According to the Petitioner, he and the victim's mother heard a noise as though someone were standing in the hallway.  The victim's mother later told the Petitioner that the victim said something to her about the incident the next morning.  He agreed that he and the victim's mother continued their relationship after the victim revealed the abuse.  He testified that the victim never saw his private area or saw him masturbate or ejaculate.

The Petitioner and the victim's family lived with the Petitioner's mother for a period of time, and the Petitioner's mother testified that she had a good relationship with both the victim and the victim's mother and had never seen the Petitioner behave inappropriately.  She testified that she would not support the Petitioner if she believed he had committed the offenses.  The Petitioner's sister testified that the Petitioner had never behaved inappropriately with her or with any of her friends growing up, that he was very protective of her, and that she would not testify for him if she believed he had committed the crimes.  The Petitioner's sister permitted him to babysit her two boys.  The Petitioner was married but separated from his wife during the offenses, and his wife, a kindergarten teacher, likewise testified that she did not believe he was capable of child sexual abuse.  She stated that she had witnessed the Petitioner around children she babysat when they lived in Japan and that he did not behave inappropriately with them or with his own son.

The trial court convicted the Petitioner of two counts of aggravated sexual battery, acquitted him of the remaining charges, and sentenced him to two concurrent terms of eight years in prison.  On appeal, this court rejected the Petitioner's challenge to the sufficiency of the evidence.  *Adam Davis*, 2018 WL 1468819, at *8.

## Post-Conviction Proceedings

The Petitioner filed a timely post-conviction petition alleging various errors committed by trial counsel, including that counsel "failed to secure witnesses that had vital information regarding the alleged victim and to obtain child services reports that would help [the Petitioner] at trial" and "did not pursue getting an expert to testify on [the Petitioner's] behalf or about  [the Petitioner's] medical condition."

At the post-conviction hearing, the Petitioner testified that he only met with trial counsel three times, although he also saw her briefly during court appearances.  He gave trial counsel a list of witnesses and their anticipated testimony, but she failed to contact any of them other than his mother and sister.  He stated that Mr. Steven Barrett could have testified to his character and could have testified that the victim did not exhibit unusual or changed behaviors at the time of the offenses.  Ms. Kayla Jacobs would have given similar testimony.  He also told trial counsel to contact a friend of the victim's mother, and he believed this witness could have testified to the victim's behavior.

The Petitioner asserted that he gave trial counsel a copy of his medical records but that she failed to introduce them into evidence. He testified that the records would have shown an inability to do "any kind of physical activity, in general, [let alone] any kind of sexual activity." The Petitioner ruptured a disc in his spine when he was in the military, and he had a second surgery on his back in May 2014. He stated he had difficulty walking and getting dressed, and, in particular, that he suffered from erectile dysfunction. His testimony at the post-conviction hearing was that "during a large span … of that year, that – that was physically not possible." He stated that an expert could have helped his case, particularly a psychological expert who could have testified about the victim.

The Petitioner acknowledged that the victim's mother testified that they were sexually active. He also acknowledged that trial counsel asked him at the end of his testimony if he wanted to add anything and that he did not add that he was suffering from erectile dysfunction at the time. The Petitioner explained that he was too emotional at the end of his testimony to introduce the topic.

Mr. Barrett testified that he had known the Petitioner since high school, that they played Xbox online four to five nights a week, and that he respected and trusted the Petitioner and believed him to have a good character. He had been willing to testify but was never contacted by trial counsel. He had never seen the Petitioner taking care of children, including the victim.

Ms. Jacobs likewise went to high school with the Petitioner, was willing to testify, and was not contacted by trial counsel. Ms. Jacobs testified that the Petitioner got along well with children but that she had never seen him with the victim. The Petitioner was in severe pain as a result of his back injury and had difficulty with daily activities, including walking. Ms. Jacobs believed the Petitioner had a good character.

Trial counsel testified that she had "quite a bit of contact" with the Petitioner and his family by telephone prior to the trial. She did not recall the Petitioner asking her to contact either Mr. Barrett or Ms. Jacobs, but at his request, she did contact a friend of his from the military as a potential character witness. Trial counsel believed that the Petitioner's mother and sister, who testified at trial about the Petitioner's character, were the best witnesses to call because they had seen him with the victim. She felt other character witnesses would be cumulative.

Trial counsel recalled that the Petitioner had some medical conditions but did not recall if she received his medical records. However, she recalled discussing "his medical records with the State and his medical condition." She stated she did not believe the Petitioner told her he had erectile dysfunction but that she recalled him saying his pain

medication "gave him certain sexual limitations." Trial counsel recalled that there was proof that the Petitioner was sexually active with the child's mother. She also testified that the defense needed a theory that would explain the child's sexual knowledge. Accordingly, she attempted to introduce proof that the child had seen the Petitioner and her mother engaged in sexual activity.

The Petitioner introduced his medical records. The records reveal that the Petitioner suffered from chronic back pain and insomnia. The records also show that on August 18, 2015, the Petitioner requested testing for sexually transmitted diseases ("STDs") because his new partner had tested positive for an STD. During a medical appointment on April 19, 2016, the Petitioner marked a box for "sexual dysfunction," painful urination, and blood in urine. He did not mark the box for "impotence."

The post-conviction court denied relief. The court found that the "Petitioner presented no witnesses or child service reports at the Post Conviction Hearing that would have been of any significant help or benefit to the Petitioner." The post-conviction court also examined the claim in the petition that trial counsel deficiently failed to obtain a medical expert. The post-conviction court noted that the testimony at trial established that the Petitioner was sexually active, and it likewise noted that the Petitioner had not presented any expert at the post-conviction hearing. The post-conviction court found that the Petitioner had not established that his right to counsel was violated, and it denied relief.

## ANALYSIS

### I. Ineffective Assistance of Counsel

Under the Post-Conviction Procedure Act, a petitioner is entitled to relief when "the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The burden of proving allegations of fact by clear and convincing evidence falls to the petitioner seeking relief. T.C.A. § 40-30-110(f). The post-conviction court's findings of fact are binding on the appellate court unless the evidence preponderates against them. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Accordingly, the reviewing court defers to the post-conviction court's findings regarding the credibility of witness, the weight and value of witness testimony, and the resolution of factual issues. *Id.* Questions of law and mixed questions of law and fact are reviewed de novo. *Id.* Each element of a claim of ineffective assistance of counsel is a mixed question of law and fact. *Id.*

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). To prevail on a claim that he was denied his constitutional right to effective assistance of counsel, a petitioner must prove both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick*, 454 S.W.3d at 457 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

Deficiency requires showing that counsel's errors were so serious "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To demonstrate deficiency, the petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Courts must make every effort "'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 689). "'[A] reviewing court must be highly deferential and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999)). In evaluating counsel's performance, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 690-91). The reviewing court must begin with the presumption "that counsel provided adequate assistance and used reasonable professional judgment to make all strategic and tactical significant decisions." *Davidson v. State*, 453 S.W.3d 386, 393 (Tenn. 2014).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, absent the errors, the result of the proceeding would have been different. *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Honeycutt*, 54 S.W.3d 762, 768 (Tenn. 2001) (quoting *Strickland*, 466 U.S. at 694). The petitioner must show that the deficiency deprived him of a fair trial and called the reliability of the outcome of the proceeding into question. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

## A. Failure to Investigate or Present Witnesses

The Petitioner asserts that trial counsel failed to investigate Mr. Barrett or Ms. Jacobs as possible witnesses despite the fact that he provided trial counsel with their contact information and anticipated testimony. He asserts that her failure to investigate or call the witnesses constitutes ineffective assistance. We conclude that the Petitioner has failed to establish prejudice.

The testimony of the witnesses at the post-conviction hearing only had bearing on the Petitioner's general character and on his back injury. At trial, the Petitioner's mother, sister, and wife gave similar testimony about his character and injury. The witnesses actually presented at trial were able to give more detailed testimony and also had testimony that was relevant to the Petitioner's relationship with the victim. There is no reasonable probability that, had the omitted witnesses been presented at trial, the result of the proceeding would have been different. *See David Neal Davis v. State*, No. M2012-02643-CCA-R3-PC, 2014 WL 1260610, at *12 (Tenn. Crim. App. Mar. 27, 2014) (concluding that, when trial counsel had presented witnesses at trial to testify about the relationship between the petitioner and the victim of aggravated sexual battery, the petitioner had failed to show prejudice in counsel's not calling additional character witnesses, and also concluding that the post-conviction court did not err in determining this was a strategic decision). Because the Petitioner has not shown prejudice, he is not entitled to relief.

## B. Failure to Investigate or Introduce Medical Proof

The Petitioner also contends that trial counsel was deficient in not introducing medical proof regarding his erectile dysfunction. He asserts that trial counsel's testimony that she did not recall looking at his medical records amounts to a deficient failure to investigate. We conclude that the Petitioner has failed to establish deficiency or prejudice.

The petition for post-conviction relief asserted that trial counsel "did not pursue getting an expert to testify on Defendant's behalf or about Defendant's medical condition." At the hearing, the Petitioner introduced his medical records, which demonstrated that at a medical visit about eight months after his last contact with the victim, the Petitioner wished to be tested for STDs because his new sexual partner had a positive STD screening. Approximately eight months after that visit, the Petitioner informed his medical provider during a visit that he suffered from "sexual dysfunction" but not "impotence." He testified at the hearing that at the time of the offenses, he suffered from erectile dysfunction.

The proof at trial included testimony from the victim's mother that she and the Petitioner were sexually active at the time of the alleged abuse and for months afterward. The proof also included the Petitioner's own testimony giving a description of the sex acts in which he and the victim's mother engaged two days prior to the victim's revealing the abuse. The Petitioner was attempting to establish that the child acquired knowledge of sexual matters from witnessing these acts between her mother and the Petitioner.

Trial counsel testified that the Petitioner never told her that he suffered from erectile dysfunction, although he did state that his medication "gave him certain sexual limitations." Trial counsel testified that she felt it was strategically necessary to present proof that the Petitioner was sexually active with the victim's mother, because she felt that the defense needed to provide an explanation for the child's sexual knowledge as an alternative to the explanation that she gained the knowledge through abuse. Trial counsel noted that the Petitioner's claim that he suffered from erectile dysfunction was contrary to the proof at trial.

The post-conviction court found that proof of erectile dysfunction would have been contrary to the proof at trial, and we agree that trial counsel was not deficient for not presenting evidence which would have been in conflict with the Petitioner's own testimony, with the victim's mother's testimony, and with the strategic choice to present an explanation for the victim's sexual knowledge. We likewise conclude that the Petitioner cannot establish prejudice. Regarding the allegations in the petition, the Petitioner did not present a medical expert to confirm he was unable to function sexually during the pertinent time period. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We note parenthetically that the medical records, which established that the Petitioner was sexually active eight months after the victim revealed the abuse but self-reported sexual dysfunction while awaiting trial, also did not establish he was unable to function sexually. The Petitioner is not entitled to relief.

## II. Request for Remand

The Petitioner asserts that a remand is necessary because the trial court did not make appropriate findings of fact regarding the two witnesses who were presented at the post-conviction hearing or regarding trial counsel's decision not to present medical evidence. We conclude that the trial court's findings were adequate to allow meaningful appellate review and that remand is unnecessary.

The Post-Conviction Procedure Act requires the post-conviction court to make factual findings and conclusions of law with regard to each ground raised in the petition. T.C.A. § 40-30-111(b) (mandating that the court "shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and

conclusions of law with regard to each ground"). The reasoning behind the requirement is to establish a basis adequate for appellate review. *Michael Branham v. State*, No. E2008-00404-CCA-R3-PC, 2009 WL 160920, at *4 (Tenn. Crim. App. Jan. 23, 2009); *see Strouth v. State*, 755 S.W.2d 819, 822 (Tenn. Crim. App. 1986). Accordingly, "[n]oncompliance by the postconviction court does not warrant a reversal if the record is sufficient to effectuate a meaningful appellate review." *Rickman v. State*, 972 S.W.2d 687, 692 (Tenn. Crim. App. 1997); *see Joseph Franklin Clark v. State*, No. E2006-01171-CCA-R3-PC, 2006 WL 3813627, at *3 (Tenn. Crim. App. Dec. 28, 2006) (reversal is not required when oral findings are adequate to permit appellate review). A failure to make a finding on a question of fact which is not dispositive of the legal issue of ineffective assistance of counsel does not require a remand to the trial court. *State v. Swanson*, 680 S.W.2d 487, 489-90 (Tenn. Crim. App. 1984).

Here, the written petition alleged that trial counsel "failed to secure witnesses that had vital information regarding the alleged victim and to obtain child services reports that would help [the Petitioner] at trial." It is clear from the post-conviction court's order that the court was addressing only the issues raised in the written petition. The court found that the Petitioner "presented no witnesses or child service reports at the Post Conviction Hearing that would have been of any significant help or benefit to the Petitioner." While the post-conviction court did not make a credibility determination regarding the conflict in testimony about whether or not the Petitioner gave the witnesses' names to trial counsel and made no credibility determinations regarding witness testimony, the post-conviction court's finding amounts to a determination that the Petitioner did not show prejudice because the witness testimony would not have been helpful at trial. Because we agree with this dispositive legal determination regarding prejudice, remand is not required. *See Swanson*, 680 S.W.2d at 489.

The written petition likewise faulted counsel for failing to "pursue getting an expert to testify on [the Petitioner's] behalf or about [the Petitioner's] medical condition." The post-conviction court determined that any evidence of erectile dysfunction would have been contrary to the evidence at trial and that the Petitioner failed to show prejudice because he did not present an expert. Although the Petitioner requests remand to determine the potential impact of the medical records on the jury, the post-conviction court's order concluded that the Petitioner had failed to demonstrate prejudice on the issue raised in the written petition by failing to present a medical expert. Accordingly, the post-conviction court's findings of fact and conclusions of law are sufficient to allow appellate review without a remand. *See Rickman*, 972 S.W.2d at 692.

## CONCLUSION

Based on the foregoing reasoning, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE